ALABAMA GREAT SOUTHERN R. CO. et al. v. JOHNSON et al.

No. 10823.

Circuit Court of Appeals, Fifth Circuit.
Feb. 10, 1944.

Ben F. Cameron and Lester E. Wills, both of Meridian, Miss., for appellants.

Marion W. Reily, of Meridian, Miss., for appellees.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by the parents and the brothers and sisters of Roger Johnson, age 12, and J. B. Johnson, Jr., age 10, who had been run over and killed while at and on a public crossing, the suit was for the damages recoverable under the Mississippi Statute.[1] The claim was that their deaths were due to the negligence of the defendants, railroad company and Roden, its engineer, in not sounding the statutory signals and in not keeping a reasonable lookout in approaching the crossing. The defenses were (1) a denial of the negligence charged; (2) a claim that decedents, when struck, were not passing over, but were loitering on the tracks, and, therefore, were trespassers to whom there was no duty to give the statutory signals, and (3) that if there was negligence in respect of them, they were themselves guilty of contributory negligence.

There was a trial to a jury, at the conclusion of which the court, rejecting the de-

[1] Chapter 229, Laws of 1922, Sec. 515, Hemingway's Code of 1927, the applicable part of which here is: "Such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested.", as construed in Avery v. Collins, 171 Miss. 636, 157 So. 695; Gulf Refining Co. v. Miller, 153 Miss. 741, 121 So. 482, and cases cited.

fendants' contention that they were not under a duty to sound statutory signals, but instructing it that decedents were themselves negligent, submitted the cause to the jury to determine (1) whether the negligence of decedents was the sole proximate cause of the injury, (2) whether the defendants were guilty as charged of failing to give the proper signals and to keep the necessary lookout, and (3) whether if negligent, their negligence was the proximate cause of the deaths. The verdict, a general one with answers also to special interrogatories, was for plaintiffs, fixing their damages at $30,000.00.

Defendants have appealed, assigning as errors (1) the rejection of their claim that the decedents were trespassers, and, therefore, defendants owed them no duty to give the statutory signals; (2) the admission in evidence of testimony as to experiments made for the purpose of determining the point at which the enginemen could have seen the crossing; (3) the admission in evidence of Mrs. Johnson's testimony that she had sent the boys on an errand which required them to cross the tracks; (4) the admission in evidence of statements purported to have been made by the engineer shortly after the accident; and (5) errors in giving and refusing charges including interrogatories and charges on the measure of damages.

■ A careful examination of the record in the light of these contentions leaves us in no doubt that the court was not in error (1) in completely rejecting defendants' theory that the decedents, who were killed while on a public crossing, were trespassers and no duty of warning was owed them, and (2) in admitting Mrs. Johnson's testimony and the testimony as to the experiments. We are equally without doubt that except as to the instructions with regard to the measure of damages, no reversible error was shown either in respect of the charges given or of those refused. Upon the measure of damages, however, the matter stands quite differently, and because the jury was affirmatively instructed, when there was no evidence to justify the instruction, that they could also find for the plain-

tiff for such "amount of money that the evidence shows that these boys might have voluntarily contributed to their parents after they reached twenty-one years of age", the judgment must be reversed. In Gulf Refining Co. v. Miller, 153 Miss. 741, 121 So. 482, 484, this instruction was specifically condemned. There, holding that the trial court ought to have granted an instruction, the negative of the one given here, but that, though error, it was not reversible, the court pointedly said:

"We think the court should have granted this instruction, but, in the light of the *fact that the jury was not instructed in anywise to consider this element of damage,* we do not believe we should reverse this case because of its refusal, for we have no reason to believe that the jury awarded anything on this element of damage." (Emphasis supplied.)

Here the very thing occurred which the court said would have been reversible error if it had occurred there, and it is quite plain that its occurrence here contributed to the unusually large verdict. For, though the jury was instructed that the decedents were negligent and the recovery must be reduced because they were, the verdict in this case was for $30,000, a sum which could not, under Mississippi law, reasonably have been arrived at unless the jury took into consideration the speculative element of future contributions which had been submitted to it, though there was no evidence whatever to guide the jury in, or form a basis for, its determination. Given to the jury in the general charge, the instruction was promptly and immediately objected to and relief from it asked. The District Judge refused relief and adhered to the instruction not on the ground that the evidence justified its giving but on the ground that the precise language had been taken from defendants' special instruction numbered "E" which he had refused to give, and that, though the instruction as a whole had been marked, "Refused", he felt that he should adhere to it.[2]

■ We think it quite clear that the complained of action constituted reversible error. The doctrine that there shall be no

---

[2] This is the record with respect to the giving of, the objection to, and the refusal to retract, the instruction: After instructing that in actions for wrongful deaths such as this, the courts and juries consider and deal with the money value of the boys to their parents if they had not been killed and that the jury could not render any verdict to compensate them for sorrow or grief because of the death of the two boys, the court said, "If you render a verdict for the plaintiffs

reversal for invited error is, when justly and correctly applied, a wise and wholesome one. Based as it is, on estoppel, it finds its justification only when facts exist which raise an estoppel. Of wide and varied application, beginning with and attending a trial throughout, it, particularly in those jurisdictions which do not require objections to charges to be made before the jury retires, as Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, does,[3] prevents a litigant from speculating on a verdict, and then, when the speculation turns out badly, escaping the consequences of having done so. Under the title Appeal and Error, "Estoppel to Allege Error—Error Committed or Invited by Party Complaining", 5 C.J.S. contains

an excellent discussion beginning with Sec. 1501 on page 173 and running through Section 1516 on page 237. Throughout the discussion, the basis of the rule that one may not on review complain of errors below for the commission of which he is responsible is made clearly to appear. Section 1507, subd. g, dealing with instructions relative to the amount of recovery, thus clearly states the rule:

"An appellant or plaintiff in error is estopped to question the correctness of an instruction as to the amount of recovery or rule of damages stated in the charge at the trial, when such instruction or rule was adopted at his instance, or is similar to one requested by him."

---

you can take into consideration the net money value of the services that these boys would have rendered to their parents while they were under twenty-one years of age *and the amount of money that the evidence shows that these boys might have voluntarily contributed to their parents after they reached twenty-one years of age.*" (Emphasis supplied.) Then appears the following colloquy:

By Mr. Cameron: "Shall we have exceptions? The rules require that the exceptions be taken before the jury retire."

By the Court: "Not in the presence of the jury." (The jury retired.)

By the Court: "Now Mr. Cameron, you may state your exceptions to the charge."

By Mr. Cameron: "I respectfully submit while the jury was in the box I offered to make them because it is my conception that they should have to be made under the rules before the jury retires, and so I offered to make them, but I am perfectly willing to go ahead with them now."

Then after exceptions not material here, this exception:

"To that portion of the charge where the Court advised the jury that the jury was authorized to award to the plaintiffs any amount the jury found the evidence to show that the boys might have contributed after they were 21 years old, for the reason that there was no evidence from which the jury could have reached such a conclusion."

By the Court: "Right at that point, Mr. Cameron, let me state that I gave that instruction because it was requested by you under your instruction No. E, and the only part that I eliminated from your instruction requested under E was the following, which I have marked in parenthesis, and reads as follows, you

having requested this: 'or for the loss of any joy or happiness or comfort that any of them would get out of the companionship of these boys if they had lived'. I eliminated that clause from your requested instruction, otherwise I was reading it just as you requested it."

By Mr. Cameron: "If the Court please I was advised by the fact that the Court had marked 'refused' on Instruction E that it has been refused in toto, this having been submitted prior to the beginning of the argument, and we now submit that the instruction as given to the jury permitting the jury to award any damages to the plaintiffs after they were twenty-one years of age is error, because there is no evidence on which it could be founded."

By the Court: "Well, you have requested it be so given, with the exception of that part I eliminated, I am not going to call the jury back to change it. The instruction is not in such language as I would have given it if not requested to do so, but having been requested to give that instruction and it being substantially correct as I saw it with that one exception, I gave it; but, being erroneous as a whole, before the argument started I did mark it 'refused' for the simple reason I considered that part I have heretofore quoted as erroneous, and otherwise I read from the instruction to the jury. You may have the exception under those circumstances."

[3] "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

If defendants had not timely objected to it as incorrect, they could not have complained here of the instruction as error. But they did timely object. In exact accordance with Rule 51, a rule aptly drawn to do away altogether with sleeping complaints and in effect, as to instructions, superseding and making unnecessary resort to the rule of invited error, defendants, before the jury retired to consider its verdict, objected, excepted to, and sought correction of the instruction, the giving of which is now assigned as error. Notwithstanding that defendants, as required by the rule, stated distinctly the matter to which they objected and the ground of the objection, the District Judge refused to correct it. He did this on the wholly untenable ground that because the defendants had suggested the idea in a refused charge and the court had made the idea his own in the general charge, he and they became irrevocably and inescapably committed to the error so that they could not, or at least ought not, on second and better thought, correct it though the objection was made before the jury had retired to consider its verdict. Even if defendants' instruction "E", which contained the complained of language, had been marked "given" instead of "refused", and had been given exactly as the defendants had requested it, defendants could have timely pointed out and confessed the error in their own charge and obtained a proper instruction effecting its cure. It is even clearer here, their requested charge having been refused, that defendants were not estopped from proceeding under Rule 51 to correct the error into which they and the court had fallen. The Federal rules, by aiding in converting a lawsuit from a battle of wits and a succession of traps and pitfalls into a calm and ordered procedure for the discovery of truth, were designed for the purpose of avoiding the very situation which this case presents, the loss of rights, the prevention of justice, through errors which, by timely request for correction, are called to the attention of the court. The rules begin with the statement that they shall be interpreted to secure the just, speedy and inexpensive determination of every action. Rule 61 provides: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Rules which were adopted with the express purpose of relieving litigants from traps and pitfalls and procrustean rulings or results may not be applied, as they have been here, to produce them. It is entirely true, as counsel for appellees point out, that we may not relieve against an excessive verdict merely because it is excessive, but it is equally true, and in Sinclair Refining Co. v. Tompkins, 5 Cir., 117 F.2d 596, 597, we have said, that though the size of the verdict is the trial judge's responsibility and not ours, "it justifies our careful scrutiny of the errors specified which may have produced it." Here the verdict, $15,000.00 for the pecuniary loss resulting from the death of each child, is very large, in fact larger than any other verdict in a child death case allowed by the Mississippi courts[4] to stand, which has been called to our attention. When we consider it in the light of the objected to charge and of the meaning and purpose of the Mississippi death statute as construed by its courts,[5] the preju-

---

[4] In Gulf Refining Co. v. Miller, 150 Miss. 68, 116 So. 295, the verdict set aside on the first appeal was $15,000.00, that sustained on the second appeal was for $11,000.00. In both reports the vice of an incorrect charge in its effect on the amount of the verdict is clearly pointed out.

[5] In Avery v. Collins, 171 Miss. 636, 157 So. 695, 699, where there was a verdict for $7500.00, the court, reversing on the ground that the jury must have taken improper matters into consideration, said:

"It is not the purpose of the statute creating a right of action for death that the death shall be converted into an occasion for speculative profit in behalf of any of the beneficiaries, whoever they may happen to be. The conception of any profit at all, whatever the character thereof, out of the misfortune of death would be no less obnoxious to the statute than to sentiment. Damages (1) for the pain and suffering of the deceased before his death, and (2) for the loss of companionship and society, but not by way of solatium, and (3) compensation estimated on the present net value of any pecuniary benefits which the evidence discloses that the beneficiaries had a reasonable expectation of receiving from the decedent during their respective lives had he continued to live, complete the measure of the statutory purpose.

"The evidence shows that the boy killed was thirteen years old, and lived and worked with his mother on a small farm of about 8 acres in cultivation. It is not shown that he had any estate, or that he had ever conferred gratuities, or that he had anything out of which to bestow gratuities. That no such amount as $7,-

dicial character of the error assigned becomes crystal clear. Only if the error can be regarded as invited by appellants and, therefore, not available to them, can we refuse reversal. We think it too plain for argument that there was no invitation to error but quite the opposite. The invitation was, indeed, to correct, the answer to the invitation was to preserve, the error. The District Judge was right in his statement to the defendants that under the rule the objections could be made out of the presence of the jury. The rule so provides. But it clearly intends and in terms provides that the charge shall not be regarded as final and that the jury shall not be considered as having retired to consider their verdict until all exceptions to it have been made and passed on, and proper corrections made. For the error in refusing to correct the charge, in respect of the measure of damages, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

.500 could be found out of loss of services is too plain for argument, even when we leave aside the fact that there was no proof as to the life expectancy of any of the beneficiaries. It follows that the jury must have resorted to the element of pain and suffering, or some other element not within the law in arriving at the amount fixed by them. But it is so ap-

parent from all the evidence that the jury had so little upon which to stand as to the element of pain and suffering of the deceased that we are driven to the conclusion that the jury must have resorted also to some other consideration not within the law in arriving at the amount fixed by them."