**Larry CORRIZ, Plaintiff-Appellee,**

v.

**Emilio NARANJO, Steve Martinez, Canuto Martinez, and Rio Arriba County Sheriff's Department, Defendants-Appellants.**

**No. 80–1462.**

United States Court of Appeals, Tenth Circuit.

Argued May 11, 1981.

Decided Dec. 9, 1981.

Rehearing Denied Feb. 8, 1982.

Lynn Pickard of Pickard & Singleton, Santa Fe, N. M. (Steve Herrera, Santa Fe, N. M., and Richard H. Rosenstock, Chama, N. M., with him on the brief), for plaintiff-appellee.

George R. Glass of Kegel, McCabe & Montez, Santa Fe, N. M., for defendant-appellant Emilio Naranjo.

Steven L. Tucker of Jones, Gallegos, Snead & Wertheim, Santa Fe, N. M., with him on the brief, for defendants-appellants.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This appeal primarily challenges a jury verdict for compensatory damages in a suit under 42 U.S.C. § 1983 as being so excessive as to require the grant of a new trial on the issue of damages. The facts recited herein are either uncontested or consistent with the jury's verdict.

Plaintiff Larry Corriz, then 18 years of age, was driving his car to Santa Fe, New Mexico, on September 3, 1976, when he stopped to visit with two friends who were

sitting in their parked car in an arroyo next to the road. Larry parked his car alongside theirs and the three conversed through the car window. His friends were drinking beer in their car. A few minutes later, Rio Arriba County Deputy Sheriffs Steve Martinez and Canuto Martinez arrived. Steve Martinez was drunk. Claiming that they smelled marijuana, the deputies arrested Larry's two friends. The friends informed the deputies that Larry was not involved and was only an innocent bystander. Nevertheless, Deputy Canuto Martinez twice searched Larry's person and his car. He then told Larry to leave, whereupon Larry got in his car, backed out of the arroyo and proceeded to drive toward Santa Fe. At that point, Deputy Steve Martinez drew his gun and fired at Larry. Steve Martinez testified that he believed Larry was escaping custody. The bullet penetrated the trunk, the back seat and the front seat before striking Larry in the back, causing a painful abrasion but sparing his life. Larry continued driving to a hospital where he was treated. He testified that he suffered great pain and emotional distress as a result of the shooting.

After learning of the incident from his deputies, Sheriff Emilio Naranjo went to the hospital to check on Larry's condition. Sheriff Naranjo then asked the District Attorney's office to investigate the matter. The District Attorney's office dispatched investigator Freddie Martinez to look into the matter. Investigator Martinez found no evidence of wrongdoing on the part of the sheriff's deputies. As a result of this investigation, the District Attorney ordered charges to be filed against Larry for escaping custody. This order was relayed by Investigator Martinez to Lieutenant Griego of the sheriff's office. Lieutenant Griego directed Sergeant Joe Salazar to file charges against Larry, which he did on September 15, 1976. The record contains testimony that the District Attorney's office had cooperated in the past in the prosecution of false criminal charges to aid Sheriff Naranjo in the defense of civil suits against him.

This was only the beginning of Larry's encounter with Rio Arriba County officials. Sometime after the initial shooting, unidentified deputy sheriffs stopped Larry's car, informing him they had a warrant for his arrest. When they refused to show him the warrant, Larry drove off. The deputies fired a barrage of shots at his car and followed him home, but did not arrest him.

The September 3rd shooting came to the attention of Antonio De Vargas, chairman of La Raza Unida, a minor political party in Rio Arriba County which views its primary purpose as halting further entrenchment of the Democratic Party machine in the county. Sheriff Naranjo and his deputies are members of the Democratic party; indeed, Sheriff Naranjo is the county chairman of the party. Mr. De Vargas visited Larry and his family and advised them to complain to the authorities about the September 3rd shooting. At that time no charges had yet been filed against Larry. Mr. De Vargas wrote to the New Mexico Attorney General on behalf of the Corriz family, urging removal of Sheriff Naranjo because of the shooting. The Attorney General was already conducting an investigation of allegations of corruption and abuses by Rio Arriba County officials, focusing particularly on Sheriff Naranjo.

On September 14, 1976, a local newspaper reported the substance of Mr. De Vargas' complaint to the Attorney General. The very next day Sargeant Salazar officially charged Larry with escaping custody, and an arrest warrant was issued. Larry voluntarily surrendered to magistrate court, which released him on a property bond. In May of 1977, Larry moved to dismiss the charge for failure to prosecute within the time required by New Mexico law, and the motion was granted.

Larry's complaint alleged four causes of action. Count One states a claim under the Civil Rights Act, 42 U.S.C. § 1983, alleging that defendants Naranjo, Steve Martinez, Canuto Martinez and the Sheriff's Department deprived him of liberty without due process of law. More specifically, he alleged that the defendants invaded his fun-

damental rights, protected by the due process clause of the fourteenth amendment, to be free from illegal detention, the threat of illegal imprisonment, physical abuse, and unlawful arrest without evidence to support the charge. Count Two is a pendent state law claim of malicious prosecution against Sheriff Naranjo, the Sheriff's Department, Steve Martinez and Canuto Martinez. Count Three is a pendent state law claim of assault and battery against Steve Martinez only. The jury awarded damages as follows: on Count One, against all four defendants in the sum of $30,000; on Count Two, against Sheriff Naranjo and the Sheriff's Department in the sum of $30,000; and on Count Three, against Steve Martinez in the sum of $2,273. The jury also awarded punitive damages in the amount of $30,000 against Sheriff Naranjo, $20,000 against Steve Martinez, and $10,000 against Canuto Martinez.

## I.

Defendants contend on appeal that the jury's verdict was excessive as a matter of law and represents "double recovery" for the same injuries. Plaintiff asserts that defendants' challenges to the jury instructions and verdicts were not properly preserved for review.

Rule 51 of the Federal Rules of Civil Procedure provides that:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make objection out of the hearing of the jury.

The record reflects that counsel for defendants did not adequately posit their objection to the jury instructions as allowing duplicative recovery for the same injuries. Before the jury began its deliberations, the court afforded counsel an opportunity to object to the instructions. Counsel for defendants did object to several instructions, all of which objections were overruled. Counsel objected to the inclusion of the malicious prosecution claim in the statement of claims instruction (Instruction No. 4) on the grounds that "the evidence shows that [it] should be dismissed from the case as a matter of law." Counsel objected to the deprivation of liberty instruction (Instruction No. 20) on the basis that "[a]fter the Court has already stated the claims of the parties in instruction number 4 it repeats, it repeats [sic] those claims and reemphasizes the claims of alleged misconduct and deprivation of rights." Counsel also claimed that the deprivation of liberty without due process issue "is not applicable to the facts here" and is "not truly an issue framed by the evidence." Counsel further objected to the elements of damage instruction (Instruction No. 42) on the ground that it instructed the jury to compensate the plaintiff for the various aspects of liberty of which he was deprived, such as the right to be free from physical abuse. Error was claimed "in that violation of civil rights in themselves would be, would create liability but are not measures of damages." "The further problem with it," counsel continued, is that there is "[n]o guide either in the law or in the proof of how you set a dollar amount of any sort on that kind of a—for damage calculation under that standard." Counsel also objected to the instruction concerning the measure of damages for violation of constitutional rights (Instruction No. 43) which instructed the jury that "[t]he value of such rights, while difficult to assess, must be considered great." Specifically, counsel objected that Instruction No. 43 "is telling the jury that this element of damage must be assessed as being a damage that's of great size." Defendants' other objections are not pertinent here.

It is obvious from a review of defendants' objections to the jury instructions that no objection was made to allowing the jury to return damage verdicts under each Count of the complaint. The objection to submission of the malicious prosecution claim has nothing to do with defendants' assertion that the instructions allowed multiple recovery of damages for a single injury. The objection to Instruction No. 20 is similarly irrelevant to defendants' claim on appeal. That instruction did not repeat the claims outlined in Instruction No. 4 but rather explained to the jury what is meant by a deprivation of liberty without due process of law. Counsel's claim that the deprivation of liberty issue was not framed by the evidence goes only to liability, not damages. The objection to Instruction No. 42 also misses the point. As discussed more fully hereinafter, although deprivation of civil rights is not a measure of damage, it most certainly is a compensable element of damage. The fact that damages for deprivation of civil rights are difficult to assess does not mean that such damages should not be awarded. *See Carey v. Piphus*, 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978). Finally, the objection to Instruction No. 43 is to the size of the damage award which it allows, rather than to any supposed duplication in that award. Counsel's remarks do not meet Rule 51's requirement that the grounds of objection be stated "distinctly."

The purpose of Rule 51 is to prevent a litigant from taking advantage of an error which could be rectified by the court if called to its attention by timely and specific objection. *Taylor v. Denver and Rio Grande Western Railroad Co.*, 438 F.2d 351, 353 (10th Cir. 1971). Rule 51 requires counsel "to make it abundantly clear to the trial court the objecting party's position." *Rogers v. Northern Rio Arriba Elec. Co-op., Inc.*, 580 F.2d 1039, 1042 (10th Cir. 1978). In the instant case, the trial court submitted three verdict forms to the jury: one for the civil rights claim, one for the assault and battery claim, and one for the malicious prosecution claim. Defendants did not object to the submission of the three verdict forms. To be sure, defendants did object to submission of the malicious prosecution claim on the ground that the elements of that cause of action were not proven as a matter of law. They further objected to submission of the § 1983 claim on the ground that there was no evidence to support it. These are shotgun objections which do not meet Rule 51's specificity requirement. There was no way for the trial court to know of defendants' fear that submission of the three verdict forms might lead to double recovery on some element of damage. The trial judge cannot be held to the standard of omniscience apparently envisioned by defendants.

Webster's Dictionary defines "distinct" as "obvious," "plain," or "unmistakable." We cannot say defendants' "double recovery" objection was made plain, much less unmistakable. Rule 51's requirement that the ground of objection be stated "distinctly" requires more specificity than defendants mustered. We therefore hold that the double recovery objection was not preserved for our review.[1]

---

1. Had defendants made their objection clear, the trial court would have been afforded the opportunity, envisioned by Rule 51, to analyze the supposed error and rectify it if it were found to exist. We note that one court has found a novel way to cure the error in a situation such as this. In *Linn v. Garcia*, 531 F.2d 855 (8th Cir. 1976), the trial court "merged" a § 1983 claim with a pendent state law assault and battery claim "[i]n view of the close relationship between the first and second causes of action and to avoid the possibility of a double recovery." *Id.* at 857. In this case, had the danger of double recovery been real, the trial judge could have merged Counts One and Three, thus curing the error and avoiding the need for appellate review. In this way, the purpose of Rule 51 would have been served.

Although we do not reach the merits of defendants' double recovery objection, we note that had the trial court in this case merged Counts One and Three and had the jury then returned a verdict of $32,273 on the merged claim, we would not consider such a verdict excessive or duplicative in view of the unrebutted evidence of plaintiff's injuries. *See* cases cited at note 4 *infra*.

## II.

There remains for our review the question of whether the jury's verdict was excessive. The only real issue is whether, as defendants claim, Instruction No. 43 was erroneous.

Instruction No. 43 reads as follows:

IF YOU FIND THAT THE PLAINTIFF HAS BEEN DEPRIVED OF A CONSTITUTIONAL RIGHT, OR SEVERAL CONSTITUTIONAL RIGHTS, YOU MAY AWARD HIM DAMAGES TO COMPENSATE HIM FOR THE DEPRIVATION. DAMAGES FOR THIS TYPE OF INJURY ARE MORE DIFFICULT TO MEASURE THAN DAMAGES FOR A PHYSICAL INJURY OR AN INJURY TO ONE'S PROPERTY. THERE ARE NO MEDICAL BILLS OR OTHER EXPENSES BY WHICH YOU CAN JUDGE HOW MUCH COMPENSATION IS APPROPRIATE. *THE VALUE OF SUCH RIGHTS, WHILE DIFFICULT TO ASSESS, MUST BE CONSIDERED GREAT.*

THE PRECISE VALUE YOU PLACE UPON ANY AND EACH CONSTITUTIONAL RIGHT WHICH YOU FIND WAS DENIED TO PLAINTIFF *IS WITHIN YOUR DISCRETION.* YOU MAY WISH TO CONSIDER THE IMPORTANCE OF THE RIGHT OR RIGHTS IN OUR SYSTEM OF GOVERNMENT, THE ROLE WHICH THIS RIGHT OR THESE RIGHTS HAVE PLAYED IN THE HISTORY OF OUR REPUBLIC, THE SIGNIFICANCE WHICH THIS PARTICULAR ISSUE HAD FOR THE PLAINTIFF, AND THE SIGNIFICANCE OF THE RIGHT IN THE CONTEXT OF THE ACTIVITIES WHICH PLAINTIFF WAS ENGAGED IN AT THE TIME OF THE VIOLATION OF THE RIGHTS.

(emphasis added). Defendants objected to Instruction No. 43 on the ground that it "is telling the jury that this element of damage must be assessed ... of great size," and thus preserved this issue for review. Their contention is that this instruction misled the jury into awarding an excessive verdict on Count One.

■ Defendants rely on *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for their proposition that substantial damages cannot be awarded for the deprivation of constitutional rights per se. *Carey* held that a plaintiff could recover only nominal damages for a procedural due process violation in the absence of proof of actual injury. *Id.* at 248, 98 S.Ct. at 1044. But the violation here was far from procedural. Defendants deprived plaintiff of his liberty interests in bodily integrity and arrest based on probable cause. These were violations of plaintiff's substantive rights protected by the due process clause of the fourteenth amendment. In *Carey,* the Court specifically noted that cases awarding damages for deprivation of substantive constitutional rights were not there controlling. *Id.* at 264–65, 98 S.Ct. at 1052–53. One need not look far to find authority for the proposition that substantial damages, both compensatory and punitive, may be awarded for the violation of substantive constitutional rights.[2] We therefore reject defendants' argument that only nominal damages can be awarded for the deprivation of plaintiff's substantive fourteenth amendment rights. *See Konczak v. Tyrrell,* 603 F.2d 13, 17 (7th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Baskin v. Parker,* 602 F.2d 1205, 1210 (5th Cir. 1979) (rejecting the same erroneous construction of *Carey*).

■ In any event, plaintiff produced sufficient evidence of actual damages in this case to justify a substantial compensatory award under Count One. Plaintiff proved his medical expenses and loss of earnings. He testified that he was afraid that he

---

**2.** *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 252, 101 S.Ct. 2748, 2752, 69 L.Ed.2d 616 (1981); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971); *Mon-* roe v. Pape, 365 U.S. 167, 173, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961); *Nixon v. Herndon,* 273 U.S. 536, 540, 47 S.Ct. 446, 71 L.Ed. 759 (1927). *See* cases cited at note 4 *infra.*

might go to prison during the period that the false charges were pending; he lost interest in recreational activities; he can only do light work; he has suffered personality changes and has lost confidence in himself; he has begun to drink heavily; he has a constant irrational fear of police officers; he has trouble sleeping and has a recurring nightmare in which the police shoot at him and his brother and kill his brother. A psychiatrist testified that plaintiff suffers from traumatic neuroses from which he may never recover and recommended a year of therapy. Defendants called no witnesses to rebut the evidence of psychological injury. Although some of these damages are not quantifiable with precision, they are nevertheless actual damages which could support the compensatory award in this case.

█ It is settled that damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights.[3] In *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979), the court recognized that:

Emotions are intangible but they are none the less perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

*Id.* at 1209. Justice requires that plaintiff be compensated for the intangible injuries he suffered as a result of the constitutional deprivation. The difficulty of setting a money value on intangible, nonpecuniary, *but actual* damages cannot be permitted to deter society from its duty to compensate plaintiff.

It is the law in this Circuit that

absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial, the jury's determination of the amount of damages is inviolate.

*Ketchum v. Nall*, 425 F.2d 242, 244 (10th Cir. 1970); *Morgan v. Labiak*, 368 F.2d 338, 341 (10th Cir. 1966). "Ordinarily this question is primarily for the trial court alone and a determination thereof presents no grounds for reversal on appeal except for manifest abuse of discretion." *Smith v. Welch*, 189 F.2d 832, 837 (10th Cir. 1951).

█ We cannot say that the award here was so excessive as to "shock the judicial conscience," in light of the many other cases upholding large compensatory awards for deprivations of substantive constitutional rights.[4] Thus we are left with defendants' argument that Instruction No. 43 tainted the jury's deliberations so as to produce an excessive award.

█ We hold that Instruction No. 43 was not so prejudicial as to require reversal in this case.

3. See, e.g., Brule v. Southworth, 611 F.2d 406, 411 (1st Cir. 1979); Halperin v. Kissinger, 606 F.2d 1192, 1207 (D.C.Cir.1979), aff'd by an equally divided court, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981); Konczak v. Tyrrell, 603 F.2d 13, 17 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); Baskin v. Parker, 602 F.2d 1205, 1209 (5th Cir. 1979); Simineo v. School Dist. No. 16, 594 F.2d 1353, 1357 (10th Cir. 1979); Paton v. LaPrade, 524 F.2d 862, 871 (3rd Cir. 1975); Williams v. Matthews Co., 499 F.2d 819, 829 (8th Cir. 1974), cert. denied, 419 U.S. 1021, 1027, 95 S.Ct. 495, 507, 42 L.Ed.2d 302 (1974); Donovan v. Reinbold, 433 F.2d 738, 743 (9th Cir. 1970).

4. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 252, 101 S.Ct. 2748, 2752, 69 L.Ed.2d 616 (1981) ($72,910); Herrera v. Valentine, 653 F.2d 1220, 1231 (8th Cir. 1981) ($300,000); Flores v. Pierce, 617 F.2d 1386, 1392 (9th Cir. 1980), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980) ($48,500); Brule v. Southworth, 611 F.2d 406, 411 (1st Cir. 1979) ($2,000); Konczak v. Tyrrell, 603 F.2d 13, 17–18 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980) ($12,500); Cruz v. Beto, 603 F.2d 1178, 1186 (5th Cir. 1979) ($10,291); Simineo v. School Dist. No. 16, 594 F.2d 1353, 1357 (10th Cir. 1979) ($60,000); Stoddard v. School Dist. No. 1, 590 F.2d 829, 835 (10th Cir. 1979) ($33,000); Linn v. Garcia, 531 F.2d 855, 860 (8th Cir. 1976) ($1,250); Redmond v. Baxley, 475 F.Supp. 1111, 1121–22 (E.D.Mich.1979) ($130,000).

[I]n cases involving constitutional rights, compensation should not be approached in a niggardly spirit. It is in the public interest that there be a reasonably spacious approach to a fair compensatory award for denial or curtailment of the right. Specifying such damages will always be difficult, but they must be at least an amount which will assure the plaintiff that personal rights are not lightly to be disregarded and that they can be truly vindicated in the courts.

*Halperin v. Kissinger*, 606 F.2d 1192, 1208 (D.C.Cir.1979), *aff'd by an equally divided court*, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981) (footnotes omitted). We agree with this statement and therefore refuse to reverse the trial judge merely because he took a "reasonably spacious approach" to awarding damages for constitutional deprivations. While perhaps not the preferred form,[5] Instruction No. 43 did no more than make clear to the jury that they should not lightly disregard plaintiff's constitutional rights. That instruction properly left valuation of damages entirely within the jury's discretion.

In light of the evidence presented, we are satisfied that the amount of the verdict does not itself suggest that the jury applied an incorrect standard in evaluating plaintiff's damages. The testimony conclusively shows that plaintiff underwent dramatic personality changes as a result of the shooting and the false arrest. He suffers from insomnia, paranoia, and traumatic neuroses from which he may never recover. The expert testimony concerning plaintiff's psychological injury was not rebutted by defendants. This situation is like that presented in *Redmond v. Baxley*, 475 F.Supp. 1111 (E.D.Mich.1979), where the plaintiff prisoner brought a § 1983 action for damages resulting from a rape which occurred in a prison infirmary. Aside from the physical injury caused by the rape, the plaintiff's expert testified that "plaintiff was depressed, suffered rape flashbacks, could not develop friendships, perceived himself as a woman, and seemed unable to have relationships with women" as a result of the rape. As in the case before us, this expert testimony was uncontroverted. The jury awarded the plaintiff $130,000, and the court held that this verdict was not excessive. *Id.* at 1121–22.

In this case, as in *Baxley*, plaintiff presented uncontradicted evidence of substantial injury. The compensatory award here is less than half the amount awarded by the jury in *Baxley* for comparable injuries. This reinforces our conclusion that the damage award in the instant case was not so excessive as to require a new trial.

In sum, we hold that the trial judge did not abuse his discretion in refusing to order a new trial on the grounds of excessiveness of the verdict. We have considered the other contentions raised by defendants and find them to be without merit. The judgment below is therefore

AFFIRMED.

WILLIAM E. DOYLE, Circuit Judge, specially concurring.

For the reasons set forth hereinafter, I concur in the position adopted by Judge McKay, to affirm the judgment of the district court.

In this case, Corriz, the plaintiff, was shot by a law officer and was later charged with a crime in Rio Arriba County, New Mexico. These acts were alleged to be wholly without justification; the case filed against Corriz was allegedly entirely devoid of substance. The plaintiff was again stopped on a subsequent occasion by other officers who sought to arrest him and, indeed, claimed that they had a warrant for his arrest. If they had such a warrant they did not execute it. On that occasion, the officers fired at him as he departed. All of this is set forth in the fact statement of Judge McKay.

---

5. A preferable form of instruction is that used in *Herrera v. Valentine*, 653 F.2d 1220 (8th Cir. 1981). *See id.* at 1227.

Judge McKay has adopted the position that the question of possible double recovery is not reviewable because objections and exceptions were not made in the trial court. Judge McKay further concluded that the verdicts were not excessive, and that the instruction complained of by appellants on damages due to violation of constitutional rights was not erroneous.

Defendants objected to the trial court's instructions on the ground that the evidence was insufficient to support the pendent state claims alleging malicious prosecution, and the claim based on false charges. Defendants also objected to submission to the jury of the plaintiff's claim that he was deprived of liberty without due process of law. The ground advanced was not duplication in the federal and state claims; the objection was that there was insufficient evidence. Also objected to was the damage instruction, which listed the deprivation of various civil rights with elements of damages.

The final objection at issue here was the objection to Instruction No. 43, which stated in part that "the value of constitutional rights, while difficult to assess, must be considered great." Defendants contend that this instruction improperly directed the jury to assess a large amount in damages for deprivation of constitutional rights, if the evidence showed that constitutional rights had been violated. The instruction as a whole is somewhat ambiguous. It can be read as an instruction that constitutional rights are valuable and important. If the judge had intended to tell the jury that the damages should be high he could have done so. In any event, the verdict was not excessive in light of the evidence.

The important factor is that the objections to the instructions reveal no suggestion of concern for double recovery. Defendants argued that there was not sufficient evidence to submit two of plaintiff's theories to the jury, but did not argue that the claims overlapped or that the verdict forms were such that double recovery would be likely. Judge Barrett suggests, in his opinion, that defendants did make objection to Instructions No. 4 and 20 as "duplicitous," and that from that objection the trial court was apprised that the "crux of the objections was the likelihood of double recovery." I do not agree with this interpretation of the objections.

Instruction No. 4 contained all of plaintiff's theories of relief. In objecting thereto, defendants only asserted that the malicious prosecution claim should be dismissed based on the evidence. Instruction No. 20 was objected to as being repetitious of Instruction No. 4, and on the ground that the evidence did not support the deprivation of liberty claim. But nowhere is there a specific objection that the plaintiff's claims for relief were overlapping or duplicative.

It is important to be specific about the grounds for objection. There is a sound reason for this requirement. The requirement of precision is the only way to assure that the court shall have an opportunity to make corrections. The judge depends on counsel to point up deficiencies. Where the objections are in general terms, they do not serve the purpose. Rule 51 of the Federal Rules of Civil Procedure provides:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.* (Emphasis added.)

The terms of the rule show that a general objection is not sufficient.

This court has repeatedly held that in the absence of a timely objection in accordance with Rule 51 in the trial court, alleged errors in instructions to the jury will not be considered on appeal.[1] A general objection

1. *Pool v. Leone*, 374 F.2d 961 (10th Cir. 1967), cert. denied, 389 U.S. 943, 88 S.Ct. 309, 19 L.Ed.2d 300; *Iannacito v. Denver & Rio Grande Western Railroad*, 380 F.2d 1019 (10th Cir. 1967); *Locke v. Atchison, Topeka and Santa Fe Railway Co.*, 309 F.2d 811 (10th Cir. 1962); *Sanders v. Buchanan*, 407 F.2d 161 (10th Cir. 1969); *Smith v. Greyhound Lines, Inc.*, 382 F.2d 190 (10th Cir. 1967); *Hidalgo Properties,*

or an objection on other grounds is not adequate; the particular matter objected to must be specified.[2] The same requirements are applicable where the form of verdict is attacked.[3]

It seems clear from the above that defendants' contentions with regard to double recovery were not properly called to the court's attention, and were not preserved for review. However, this court has recognized a narrow exception to the requirements of Rule 51 where there is plain error. *Fabian v. E. W. Bliss Co.*, 582 F.2d 1257 (10th Cir. 1978); *Fiedler v. McKea Corp., supra.*

[W]e will review instructions not properly objected to at trial where the error is plain and significant. This power is to be used sparingly. *Pridgin v. Wilkinson*, 296 F.2d 74 (10th Cir. 1961). Ordinarily we do not exercise it unless it is felt that the error "may well have been a generating factor which culminated in a verdict not warranted under the law," *id.* at 76, or "where it is apparent on the face of the record that a miscarriage of justice may occur." 5A Moore's Federal Practice, Par. 51.04. *Fox v. Ford Motor Co.*, 575 F.2d 774, 786 (10th Cir. 1978).[4]

If the jury had returned a general verdict in this case, there would be no plain error in the sums awarded against the various defendants. The evidence introduced at trial was sufficient to sustain such awards. It is not possible to tell at this point what the jury's reasoning was in its allocation of amounts to the various counts. The jury may have awarded $2,273.00 under Count III as compensation for out-of-pocket type losses flowing from the battery, while all mental anguish and emotional damages re-

sulting from that incident might have been awarded under Count I.

There were several different transactions and incidents which could have been the basis for the awards. As suggested, the amount awarded is within reasonable limits considering the seriousness of the invasions of plaintiff's rights. Whatever lack of clarity there is in the verdicts could have been cured by specific instructions. Alternatively, specific verdict forms could have been provided which would have cured the problem entirely. It is the defendants' failure to object or raise the question that precludes reversal, under the principles stated above.

Our decision in *Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979) is relied on by Judge Barrett. In that case, the plaintiff had been abused by fellow prisoners while confined in a county jail. He sought to recover damages under state law and also under 42 U.S.C. § 1983. Although the defendant's objections were general and somewhat vague as to the civil rights claim, the court found that the question of double recovery was adequately preserved for appeal. There was no discussion of Rule 51 and why it did not apply in that case.

Regardless of that, I believe that the *Clappier* case is distinguishable from the case at bar. In *Clappier*, the plaintiff claimed to be entitled to damages based on essentially a single claim, abuse suffered while in prison. The plaintiff here sought to recover for a variety of alleged violations which occurred over a long period of time. Thus, the possibility of submitting duplicate claims for relief to the jury was far less likely here than in *Clappier*. In this case, in

Inc. v. Wachovia Mortgage Co., 617 F.2d 196 (10th Cir. 1980).

2. *Hardware Mutual Ins. Co. v. Lukken*, 372 F.2d 8 (10th Cir. 1967); *Rogers v. Northern Rio Arriba Electric Cooperative, Inc.*, 580 F.2d 1039 (10th Cir. 1978).

3. *Fiedler v. McKea Corp.*, 605 F.2d 542 (10th Cir. 1979); *Young v. Taylor*, 466 F.2d 1329 (10th Cir. 1972); *Union Pacific Railroad Co. v. Lumbert*, 401 F.2d 699 (10th Cir. 1968); *Arnott v. American Oil Co.*, 609 F.2d 873 (8th Cir.

1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); *Connecticut Fire Ins. Co. v. Fox*, 361 F.2d 1 (10th Cir. 1966); *Markel Service, Inc. v. National Farm Lines*, 426 F.2d 1123 (10th Cir. 1970).

4. *See also Glasscock v. Wilson Constructors, Inc.*, 627 F.2d 1065 (10th Cir. 1980); *Key v. Rutherford*, 645 F.2d 880 (10th Cir. 1981); *Prebble v. Brodrick*, 535 F.2d 605 (10th Cir. 1976); *Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569 (10th Cir. 1970).

the absence of a pertinent objection, the trial court was entitled to assume that the form of the verdicts was proper. Moreover, this case, unlike *Clappier*, does not bespeak a double recovery.

Also, civil rights cases are not subject to a special rule different from Rule 51; the party who takes exception to the form of the verdict should make objection. He owes that to the court.

Judge McKay's opinion also discusses Instruction No. 43 (the value of constitutional rights must be considered great), and I agree with his conclusion that this instruction was not erroneous and was not prejudicial.

For the reasons which are set forth above, I concur in the conclusion of Judge McKay.

BARRETT, Circuit Judge, dissenting:

In order to understand the basis of my dissent, it is necessary to review the issues framed by the pleadings, the objections posed to the instructions given, and the separate jury verdicts returned. This review leads me to conclude that the case should be reversed for failure of the trial court to pay any heed to *Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979) which, most significantly, was announced and filed in excess of *five months* prior to the Corriz trial. It is my view that the *Clappier* opinion set forth principles directly applicable to the case at bar and which, if followed by the trial court, would have avoided the errors which I deem prejudicial.

Corriz's First Amended Complaint set forth claims under four (4) causes of action, or counts, succinctly as follows:

(1) *First Cause of Action or Count I*: Corriz alleged that the defendants, acting separately and in concert, deprived him of his right to:

a) Freedom from illegal detention and imprisonment;

b) Freedom from physical abuse, coercion and intimidation; and

c) Freedom from unlawful arrest without evidence in support thereof.

Corriz specially alleged that: the above rights were secured to him by provisions of the due process clause of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C.A. §§ 1983 and 1985; the defendants acted under color of state law and outside the scope of their jurisdiction, with willful intent to deprive him of these rights; the Sheriff's Department condoned and permitted such abuses, *i.e.*, use of unlawful force and false arrests; and Sheriff Naranjo failed to properly train, supervise and control the officers of his Department.

Corriz thus alleged that, as a direct and proximate result of the aforesaid acts, he suffered great bodily pain and injury and mental anguish and that he had been damaged: (a) $300.00 representing medical care and treatment, (b) property damage of $300.00, (c) loss of earnings of $2,000.00, (d) general damages of $100,000.00, and (e) punitive damages because of the defendants' willful, malicious and/or reckless actions of $100,000.00.

(2) *Second Cause of Action or Count II*: Based upon all of the allegations contained in Count I *and* the Criminal Complaint and Arrest Warrant filed against him on or about September 15, 1976, which, he alleged, arose by reason of alleged malicious actions of Defendants Steve Martinez, Canuto Martinez, Joe V. Salazar and Emilio Naranjo, he was falsely arrested, and, as a direct and proximate cause, he suffered these alleged damages: (a) $150.00 as attorney's fees, (b) $100,000.00 for nervous shock, loss of sleep and mental anguish, and (c) $100,000.00 for punitive damages as a result of the alleged willful, malicious and/or reckless actions aforesaid, all without just cause or provocation.

(3) *Third Cause of Action or Count III*: Corriz realleged all facts set forth in the First and Second Causes of Action and, in addition, alleged that Defendant Steve Martinez did intend to shoot and seriously injure him and did so in a rude, insolent and angry manner without just cause, provocation or justification, resulting in these alleged damages: (a) $100,000.00 for medical

expenses, lost earnings, property damages and pain and discomfort, and (b) $100,000.00 for punitive damages for Martinez's willful and malicious actions.

(4) *Fourth Cause of Action or Count IV*: Corriz realleged all facts set forth in the first three causes of action and, in addition, alleged that Defendant Emilio Naranjo, as Sheriff of Rio Arriba County, was obligated to insure that the actions of the officers under his command did not endanger the persons or interests of persons subject to their custody but that, contrary to his duty and notwithstanding numerous complaints concerning improper conduct of his deputies, he failed to properly investigate, discipline or train his officers; and, that his negligent acts, errors and omissions resulted in damages in the sum of $50,000.00.

Following answer and other pre-trial proceedings, partial summary judgment was granted, as follows: (a) in favor of Sheriff Naranjo on Counts III and IV; (b) in favor of Canuto Martinez on Counts III and IV, (c) in favor of Joe Salazar on Counts I, III and IV, and (d) in favor of Steve Martinez on Count IV. Counts III and IV were dismissed as to the Sheriff's Department. Thus, the case went to trial before a jury on this basis:

First Cause of Action or Count I (Civil Rights):

   Against all defendants except Joe V. Salazar.

Second Cause of Action or Count II (Malicious Prosecution):

   Against all defendants.

Third Cause of Action or Count III (Assault and Battery):

   Against defendant Steve Martinez only.

The case was tried to the jury for five days. Separate and distinct verdicts were returned in favor of Corriz, as follows:

On the First Cause of Action or Count I (Civil Rights), against all four defendants in amount of $30,000.00.

On the Second Cause of Action or Count II (Malicious Prosecution), against Sheriff Naranjo and the Sheriff's Department in amount of $30,000.00.

On the Third Cause of Action or Count III (Assault and Battery), against Deputy Steve Martinez in amount of $2,273.00.

Punitive damages: $30,000.00 against Sheriff Naranjo, $20,000.00 against Deputy Steve Martinez, and $10,000.00 against Deputy Canuto Martinez.

The Court entered judgment in accordance with those verdicts, *as accumulated*, for a total award of $122,273.00. The defendants filed timely motions for new trial, judgment notwithstanding the verdict, and for remittitur, all of which were denied. The Court also awarded Corriz attorney fees of $44,309.75.

The appellants contend that the case should be reversed based on the following claimed errors: (1) the jury's verdict was excessive as a matter of law and represents multiple recovery for the same injuries, (2) the jury should not have been instructed on damages for violation of constitutional rights *per se* or on the liberty issue, (3) the issue of malicious prosecution should not have been submitted to the jury because it overlapped with the Civil Rights issues and because there was no evidence to support this claim against Emilio Naranjo and the Sheriff's Department, and (4) the award of punitive damages must be reversed because the underlying liability for compensatory damages was not properly determined and because it is excessive in light of plaintiff's actual damages.

I reject Corriz's contention, with which the majority agrees, that the defendants did not properly object to material, significant instructions targeted to defendants' contention that the instructions, coupled with the multiple verdicts, lead to duplicity, confusion and double recovery. With full cognizance of the requirements of Fed. Rules Civ.Proc. rule 51, 28 U.S.C.A., I believe, contrary to the majority, that the record reflects that counsel for the defendants did adequately object to various pertinent instructions given by the Court out of the hearing of the jury and *before* the jury commenced its deliberations, particularly in light of the fact that our *Clappier v. Flynn,*

*supra*, had been the law of this Circuit for five months prior thereto. The trial court overruled the objections and stated "A note will go to the jury that they will start their deliberation." [Joint Appendix, p. 359].

The purpose of Rule 51 is to prevent a litigant from taking advantage of an error which could be rectified by the court if called to its attention by proper objection. If the objection properly calls alleged error to the court's attention, then exception is taken and the requirement of Rule 51 is met. *Fiedler v. McKea Corp.*, 605 F.2d 542 (10th Cir. 1979); *Rogers v. Northern Rio Arriba Elec. Co-op., Inc.*, 580 F.2d 1039 (10th Cir. 1978); *Prebble v. Brodrick*, 535 F.2d 605 (10th Cir. 1976); *Taylor v. Denver & R.G.W. R. Co.*, 438 F.2d 351 (10th Cir. 1971). And a party claiming plain error under Rule 51 has a heavy burden of demonstrating fundamental injustice. *Clegg v. Conk*, 507 F.2d 1351 (10th Cir. 1974), *cert. denied*, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). *See also: Fox v. Ford Motor Co.*, 575 F.2d 774 (10th Cir. 1978).

It is my opinion that, viewed in conjunction with the dictates of *Clappier v. Flynn*, *supra*, the defendants-appellants properly and timely preserved their exceptions to the instructions given the jury under Rule 51, *supra*. The charge is not final and the jury is not to be regarded as having retired to consider the verdict, until all exceptions have been made and ruled on by the court and all necessary corrections made. *Downie v. Powers*, 193 F.2d 760 (10th Cir. 1951); *Alabama Great Southern R. Co. v. Johnson*, 140 F.2d 968 (5th Cir. 1944). As pointed out, *supra*, counsel for defendants did in fact posit objections to the Court's instructions before the jury commenced its deliberations.

In *Rogers v. Northern Rio Arriba Elec. Co-op., Inc., supra*, we said that "The purpose of Rule 51 is at least two-fold, namely, to make it abundantly clear to the trial court the objecting party's position, and secondly, to afford the trial judge the opportunity to make changes or corrections, if he be so inclined." 580 F.2d at p. 1042.

Objection was lodged to Instructions 4 and 20 as duplicitous and improper by injecting into the case a "false issue" upon which there was no evidence, and thus an "abstract statement concerning an alleged violation ... [constituting] ... an issue [not truly] framed by the evidence." [Joint Appendix, pp. 352, 353, 354]. The objection was directed to the Court's instructions relating to deprivation of liberty without due process of law. The above statements, coupled with defense counsel's remarks to the Court that these instructions [on the deprivation of liberty issue] "repeats those claims [of assault and battery, unlawful arrest and malicious prosecution] and reemphasizes the claims of alleged misconduct and deprivation of rights" [Joint Appendix, p. 354], adequately conveyed the clear, obvious thrust of these objections: that the federal constitutional rights deprivation claims, set forth in Instructions 4 and 20, based on "liberty interests", were improperly submitted to the jury as a separate, independent basis for liability. This is so, inasmuch as these instructions, when coupled with the instructions relating to the common law tort claims, impermissibly lead the jury to consider and return verdicts constituting double recovery under alternate theories arising from the same operative facts.

Counsel for defendants also objected to Instruction 35 which states that "an officer is not allowed to act in violation of settled law or to violate the clearly established rights of the plaintiff" as contradictory to other instructions given by the Court relating to the defenses of good faith.

Defense counsel objected to Instruction 42 as a "general statement of the elements of damage to be considered by the jury ... [including] ... elements of the damage [due to] the violation of civil rights ... *would create liability but are not measures of damages.*" [Joint Appendix, p. 357]. (Emphasis supplied). Counsel then made specific reference to *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) when contending that the instructions given create "... the opportunity for furor and rampant speculation by the jury

... [the jury] ... could not make an assessment of a verdict upon factual proof ... *no guide either in the law or in the proof of how you set a dollar amount of any sort on that kind of a—for damage calculation under that standard.*" [Joint Appendix, pp. 357–358]. (Emphasis supplied).

Further, counsel for defendants objected to Instruction 43 on the basis it "... is telling the jury that this element [violation of constitutional rights] must be assessed ... of great size." [Joint Appendix, p. 358]. The instruction does, to be sure, state precisely that to which the objection was posed. The last sentence of the first paragraph of Instruction 43, referring to compensation or damage award for the deprivation of constitutional rights states that it must be measured on this basis: "*The value of such rights, while difficult to assess, must be considered great.*" [Joint Appendix, p. 97]. (Emphasis supplied). This was certainly most misleading and clearly erroneous.

I would hold that the objections lodged were adequate to appraise the trial court of the alleged errors as presented on appeal. This is particularly so in that the District Court is charged with knowledge of the applicable law laid down in *Clappier v. Flynn, supra.*

To be sure, these contentions of error were more artfully presented by the defendants in their motion for new trial. However, it is my view that the trial court understood the crux of the objections posed, *i.e.*, the likelihood of double recovery under alternative theories seeking the same relief when tried together. This should have been abundantly clear to the Court when the jury was permitted to return four distinct, separate verdicts.

The Court's admonition contained in Instruction 43 that the [damage] award "value" of constitutional rights which Corriz may have been deprived "... while difficult to assess, *must be considered great*" [Joint Appendix, p. 97] (Emphasis supplied), is clearly in conflict with language contained in other instructions relating to compensatory and punitive damage awards.

This admonition was tantamount to an invitation for verdicts representing double recovery, and was clear error. When the judge stated to the jury that the *value* (for damage award purposes) "*must be considered great*" he unquestionably told the jury that the violation of *any* constitutional right must be assessed of great size. There is no justification for that type of instruction. It infringed on the sole prerogative of the jury to weigh the evidence and arrive at award of damages based on the facts and governing law.

In *Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir. 1960), *cert. denied*, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960), this court said that the presiding judge is the governor of the trial, with the inescapable duty to fully and correctly instruct the jury on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth. In this regard, I again observe that the jury was instructed and retired for deliberations in the instant case on February 25, 1980, some five months after this court's opinion was issued in the case of *Clappier v. Flynn, supra*. It is my view that had the District Court followed the dictates of *Clappier*, the problem of separate damage awards returned based upon alternate legal theories of liability under circumstances whereby but only one award was permissible, would have been avoided.

Here, as in *Clappier*, the alternative claims were simply alternate legal theories seeking the same relief. Corriz was not entitled to a separate compensatory damage award under each legal theory. Rather, he was entitled to *only one* compensatory damage award if liability were found on any or all of the theories.

The jury verdicts, four in number, were returned with damages awards totaling $122,273.00, as follows:

(1) Verdict in sum of $30,000.00 for compensatory damages "on the issue of violation of plaintiff's constitutional rights" against defendants Emilio Naranjo, Steve Martinez, Canuto Martinez and Rio Arriba County Sheriff's Department.

(2) Verdict in sum of $30,000.00 for compensatory damages "on the issue of malicious prosecution" in violation of state law against defendants Emilio Naranjo and Rio Arriba County Sheriff's Department.

(3) Verdict in the amount of $2,273.00 "on the issue of assault and battery" against the defendant Steve Martinez.

(4) Verdict in the following amounts and against the following defendants representing punitive damages:

$30,000.00—Emilio Naranjo

$20,000.00—Steve Martinez

$10,000.00—Canuto Martinez

I believe that the compensable transactions from which damages could arise in this case are essentially two: First, the initial police confrontation resulting in the shooting injury sustained by Corriz with his attendant medical care and mental anguish, and, second, the malicious prosecution claim which followed the shooting incident. Within the factual boundaries of these two transactions, each allegation of federal constitutional rights deprivations must necessarily find its lodging place. Those deprivations, as identified and submitted by the trial court, were: the right to be free from illegal detention; the right to be free from physical abuse, coercion and intimidation; the right to be free from unlawful arrest without evidence in support thereof; the right not to be deprived of liberty without due process of law and to be free from unlawful and excessive force against person and property; and, the right not to be subjected to the filing of false criminal charges.

Corriz sought relief under each cause of action stated in his First Amended Complaint predicated on the operative facts supporting two basic occurrences—first, assault and battery, and, second, malicious prosecution. The complaint anchored these causes of action to alternate legal theories to support the same relief sought. Under these circumstances, Corriz was entitled to only one compensatory award if liability should be found on any or all of the theories involved. *Clappier v. Flynn, supra; Green-*

*wood Ranches, Inc. v. Skie Const. Co., Inc.,* 629 F.2d 518 (8th Cir. 1980); *Cunningham v. M.G. Transport Services, Inc.,* 527 F.2d 760 (4th Cir. 1975).

*Carey v. Piphus, supra,* involved a suit for damages brought by public school students under 42 U.S.C.A. § 1983 against school officials, wherein the students were found to have been suspended from school without procedural due process. The Court specifically stated that cases involving awards of damages for injuries caused by the deprivation of constitutional rights other than the right of procedural due process were not there controlling. Nevertheless, the Court observed:

> To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages. See *Imbler v. Pachtman,* 424 U.S. [409], at 442 [96 S.Ct. 984, at 1000, 47 L.Ed.2d 128] (White, J., concurring in judgment).

### B.

It is less difficult to conclude that damages awards under § 1983 should be governed by the principle of compensation than it is to apply this principle to concrete cases. But over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the injury under § 1983 as well.

It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages, directly to the § 1983.

See *Adickes v. S. H. Kress & Co.*, 398 U.S. [144], at 231–232 [90 S.Ct. 1598, 1641–1642, 26 L.Ed.2d 142] (Brennan, J. concurring and dissenting). In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts. See *Monroe v. Pope*, 365 U.S. [167], at 196, and n. 5 [81 S.Ct. 473, at 488, 5 L.Ed.2d 492]. (Harlan, J., concurring) ... In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.

\* \* \* \* \* \*

... In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common law rules of damages themselves were defined by the interests protected in the various branches of tort law.

435 U.S. at pp. 256–259, 98 S.Ct. at pp. 1048–1050.

In the case at bar, I conclude that the alleged deprivations of Corriz's federal constitutional rights fit the "mold" and are protected by an analogous branch of common-law tort rules of damages recognized under the laws and by the courts of the State of New Mexico.

*Carey v. Piphus, supra*, was addressed in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The Supreme Court there held that petitioner Davis' cause of action against former Congressman Passman for damages in the form of back pay for discriminatory discharge of her as an employee [deputy administrative assistant] based on her sex should be recognized as an implied right of action with attendant implied right to damages anchored directly to alleged violation of the Due Process Clause of the Fifth Amendment to the Constitution. The Court analyzed the distinction between invoking the power of the courts to recognize a litigant's "cause of action" as distinct from the question of what relief, if any, a litigant may be entitled to receive. The Court observed that the damages issue must be judicially manageable:

> ... a damages remedy is surely appropriate in this case.... Relief in damages would be judicially manageable, *for the case presents a focused remedial issue without difficult questions of valuation or causation* ... Litigation under Title VII of the Civil Rights Act of 1964 has given federal courts great experience evaluating claims for back pay due to illegal sex discrimination.

442 U.S. at p. 245, 99 S.Ct. at p. 2277. [Emphasis supplied].

Unlike *Davis v. Passman, supra*, the case at bar, in light of the Court's instructions relating to the alleged deprivations of Corriz's federal constitutional rights, when coupled with the verdicts tendered, presented a focused remedial issue with difficult, confusing and/or duplicitous questions of valuation or causation.

In light of the recurring practice of pleading and joining a state tort claim-remedy with a § 1983 federal constitutional rights deprivation claim-remedy involving identical operative facts, the courts must be ever alert to avoid double recovery based upon alternative legal theories seeking the same relief. The risks of jury confusion and undue complication engendered in trying a common-law state tort claim with a § 1983 federal civil rights claim were pointed out in *Clappier v. Flynn, supra*. We there recommended that trial courts thus presented with the difficult problems of duplicity, confusion and double recovery may overcome them by:

> ... wise use of special interrogatories to be submitted to the jury pursuant to Fed. Rules Civ.Proc. rule 49, 28 U.S.C.A. Such interrogatories could require findings on *both claims* with accompanying special verdict forms which should provide the district court a clear, adequate basis for entry of the appropriate judgment.

605 F.2d at p. 530.

The purpose of the wise use of special interrogatories is to obtain consistent answers, representing a logical and probable verdict on the relevant issues as submitted.

*Willard v. The John Hayward*, 577 F.2d 1009 (5th Cir. 1978). When the verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Fed.Rules Civ. Proc. rule 58, 28 U.S.C.A. When the answers are inconsistent with each other and one or more is also inconsistent with the verdict, judgment shall not be entered and the district court must return the jury for further consideration of its answers and the verdict or grant a new trial pursuant to Fed.Rules Civ.Proc. rule 49, 28 U.S.C.A.

We are treading on dangerous ground to ignore the fact that *Clappier v. Flynn, supra*, was the law of this Circuit for five months prior to the *Corriz* trial. We have not hesitated to reverse and remand where circumstances have changed between the ruling of the trial court and the decision on appeal. *Amador D. Mestas v. Elephant Butte Irrigation District*, No. 79–1689 (10th Cir., Unpublished, 4/2/81). Thus, Rule 51 cannot have exclusive application in this case. However, even should I so agree, it is my view that the objections posited, when considered in light of *Clappier v. Flynn*, require reversal and remand.