**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

DOUGLAS ALLAN WOLFGANG,
individually, and for the benefit of
JERRILYN ANN WOLFGANG,

      Plaintiff - Appellee,

vs.

MID-AMERICA MOTORSPORTS,
INC., R.E.D. RACING, INC., and
WORLD OF OUTLAWS, INC.,

      Defendants - Appellants.

No. 95-3309

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-2135-GTV)

Michael J. Kuckelman (J. Michael Grier and Lori H. Hill with him on the brief),
Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., Overland Park, Kansas for
Defendants - Appellants.

Patrick A. Hamilton (Victor A. Bergman and Stephen N. Six with him on the brief),
Shamberg, Johnson & Bergman, Chartered, Overland Park, Kansas, for Plaintiff -
Appellee.

Before BALDOCK, KELLY,  and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

      In this personal injury diversity action, Defendants Mid-America Motorsports,

Inc., R.E.D. Racing, Inc., and World of Outlaws, Inc. appeal from a final judgment entered on a jury verdict in favor of Plaintiff Douglas Allan Wolfgang.[1] Defendants also appeal from the partial denial of their summary judgment motion, and the denial of their motions for new trial and to amend the judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## Background

On April 3, 1992, Mr. Wolfgang, a professional race car driver, crashed into a wall during a "media day" practice session at Lakeside Speedway in Kansas City, Kansas. The practice session was in preparation for races scheduled for April 4 and 5, 1992. The races were promoted by Defendant R.E.D. Racing and sanctioned by Defendant World of Outlaws. Lakeside Speedway is owned by Defendant Mid-America Motorsports.

Mr. Wolfgang's car hit a tire placed on the infield at the edge of the track and swerved out of control into a concrete retaining wall. Mr. Wolfgang was knocked unconscious. Because of the design of the car, methanol fuel spilled into the car's cockpit, pooling at Mr. Wolfgang's feet and erupting into flames. While there were normally five to seven firefighters at Lakeside racing events, only two firefighters were

---

[1] Mr. Wolfgang filed a motion to dismiss Defendants' appeal, pursuant to 10th Cir. R. 27.1, arguing that by voluntarily satisfying part of the judgment, Defendants have acquiesced in the judgment. Because we find this argument to be without merit, the motion is DENIED.

present when Mr. Wolfgang crashed. These two firefighters had never trained together and were unfamiliar with sprint car design. They had no extrication equipment, other than pry bars in pickup trucks, and some of their hand-held fire extinguishers were not designed for use on a methanol fire. In this confusion, Mr. Wolfgang sat in his burning car for eight to ten minutes before other drivers were finally able to extricate him. He was airlifted to the University of Kansas Medical Center by helicopter.

Alleging both ordinary and gross negligence in the handling of the fire, Mr. Wolfgang filed suit against Mid-America Motorsports; R.E.D. Racing; World of Outlaws; and ten other defendants, with whom he subsequently settled. Mid-America Motorsports and R.E.D. Racing were treated by stipulation as one entity, "Lakeside Speedway." Lakeside and World of Outlaws were the only defendants at trial.

Both defendants moved for summary judgment based primarily on a Release and Waiver of Liability signed by Mr. Wolfgang prior to the accident. They also argued that they had taken material affirmative steps to prevent the sort of injuries suffered by Mr. Wolfgang, and therefore could not be found liable for wanton conduct as a matter of Kansas law. Defendant World of Outlaws contended that it did not owe a duty to Mr. Wolfgang to ensure that racetrack owners and promoters provided adequate fire safety protection. Mr. Wolfgang also moved for summary judgment, arguing that the Release was void and unenforceable on public policy grounds, and that World of Outlaws had a duty arising in both contract and tort. The district court granted in part and denied in part

both of the summary judgment motions. It ruled that the Release was valid and enforceable as to Mr. Wolfgang's ordinary negligence claims, but did not bar his claims for wanton conduct. The district court also ruled that whether Defendants' actions were sufficient to defeat the wanton conduct claim was a question for the jury. Additionally, the district court found that Mr. Wolfgang had presented enough evidence to show that World of Outlaws had undertaken a duty to ensure safe racing conditions, including adequate fire protection, during the practice session at Lakeside Speedway.

The case was tried to a jury on the issue of wanton conduct. The jury found for Mr. Wolfgang, assessing damages of $1,215,000, and allocating sixty percent fault to Lakeside and forty percent fault to World of Outlaws. Defendants filed a motion for new trial on the basis of newly acquired evidence, which was denied, and a motion to amend judgment on the grounds that a portion of the medical damages awarded were not supported by the evidence, which was granted in part and denied in part.

Defendants now raise eight issues on appeal, alleging pretrial, trial and post-trial errors. Regarding the district court's pretrial determinations, Defendants contend that it misapplied Kansas law in denying summary judgment on Mr. Wolfgang's wanton conduct claim. Defendant World of Outlaws also argues that the district court erred in denying its motion for judgment as a matter of law because it had no legally cognizable duty to provide fire and rescue services during the practice session at which Mr. Wolfgang crashed. We affirm the district court on both rulings.

Defendants next raise three trial errors. They argue that the district court erred in 1) refusing to instruct the jury on negligence, 2) excluding as evidence certain audio and video tape statements by Mr. Wolfgang, and 3) excluding evidence of the Release and other testimony which Defendants claim should have been considered as part of the totality of circumstances surrounding the crash. We hold that the district court did not abuse its discretion with respect to these evidentiary rulings, and therefore affirm.

Defendants also allege three errors in the district court's denial of its requests for post-trial relief. Regarding damages, they contend that a $65,000 award for loss of services damages was non-economic in nature and therefore in excess of Kansas' statutory cap, and that the evidence did not support a significant portion of the medical expenses awarded to Mr. Wolfgang. Finally, Defendants claim the district court erred in not considering their motion for new trial based on newly acquired evidence of Mr. Wolfgang's ability to earn money as a race car driver. We find these claims meritless.

I.

A. Wanton Conduct

Defendants first challenge the district court's denial of their summary judgment motion on Mr. Wolfgang's wanton conduct claim, arguing that because they took certain fire protection measures, they could not be found wanton as a matter of Kansas law. The denial of summary judgment based on factual disputes is not properly reviewable on an

appeal from a final judgment entered after trial.  Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1250-51 (10th Cir.), cert. denied, 507 U.S. 973 (1992).  "[E]ven if summary judgment was erroneously denied, the proper redress would not be through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied."  Id. at 1251.  Failure to renew a summary judgment argument—when denial was based on factual disputes—in a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) at the close of all the evidence is considered a waiver of the issue on appeal.  Allahar v. Zahora, 59 F.3d 693, 695-96 (7th Cir. 1995).

By contrast, when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment.  Wilson v. Union Pacific R.R. Co., 56 F.3d 1226, 1229 (10th Cir. 1995);  Ruyle v. Continental Oil Co., 44 F.3d 837, 841-42 (10th Cir. 1994), cert. denied, 116 S. Ct. 272 (1995).  Because of this "critical distinction between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide," Ruyle, 44 F.3d at 842, prudent counsel will not rely on their own interpretations of whether an issue is purely a question of law or fact.  Out of an abundance of caution, and good trial practice, counsel should renew summary judgment grounds in a Rule 50 motion for judgment as a matter of law at the close of all the evidence, and again, if necessary, after the jury has returned a verdict and the trial has concluded.

Defendants argue that the district court's denial of their summary judgment motion was based on an erroneous interpretation of a purely legal question. Citing Ruyle, they argue that the denial of their summary judgment motion is therefore appealable. It is clear from the record,[2] however, that the district court recognized the genuine factual disputes raised by Mr. Wolfgang's evidence, and denied summary judgment on that basis. Thus, we may only review Defendants' claims if they were renewed in a Rule 50 motion at the close of all the evidence.

Rule 50 provides that "[m]otions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed. R. Civ. P. 50(a)(2). At the close of Plaintiff's case, Defendants made a written Rule 50 motion for judgment as a matter of law on several grounds, but did not mention any of the arguments previously advanced in their summary judgment motion. At the close of all the evidence, Defendants orally renewed their Rule 50 motion on the same grounds they asserted at the close of Plaintiff's evidence, and on the basis that the evidence precluded a finding of recklessness. In the context of this trial, this can only be

---

[2] Mr. Wolfgang filed a ten-volume Supplemental Appendix which Defendants claim contains deposition testimony not properly before us on appeal. We have not reviewed this supplemental material, nor have we relied on it in any way. All references to the record are from Appellants' Appendix.

a reference to Mr. Wolfgang's wanton conduct claim. We find that Defendants preserved this issue in their motion for judgment as a matter of law under Rule 50(a)(1).[3]

We review the district court's denial of judgment as a matter of law de novo. Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995). Accordingly, we must determine whether there is evidence upon which the jury could have properly found a verdict for the nonmoving party. Magnum Foods v. Continental Cas. Co., 36 F.3d 1491, 1503 (10th Cir. 1994). "[W]e may find error in the denial of such a motion only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Haines v. Fisher, 82 F.3d 1503, 1510 (10th Cir. 1996). The evidence and inferences therefrom must be construed most favorably to the nonmoving party; we may not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury. Magnum Foods, 36 F.3d at 1503. In diversity cases, federal law governs the appropriateness of a Rule 50 motion, while the substantive law of the forum state controls the analysis of the

---

[3]     MR. GRIER [Defense counsel]:   I renew the Rule 50 motion basically on the same areas that we discussed on the plaintiffs' case on Friday, with the addition that there has now been evidence that the defendants' conduct was not reckless and that evidence has not been controverted and for that reason we would also request a motion for judgment as a matter of law as to all the defendants.

Tr. 1974. While this reference to recklessness was sufficient to preserve the issue in the context of this trial, a much clearer indication of the facts and law upon which the Rule 50 motion relies would be preferable.

underlying claims.  Lyon Dev. Co. v. Business Men's Assurance Co., 76 F.3d 1118, 1121-22 (10th Cir. 1996).

Under Kansas law, a finding of liability for wanton conduct requires proof of two distinct mental attitudes in the defendant—a realization of the imminence of danger and a reckless disregard or complete indifference for the probable consequences of the defendant's conduct.  Boaldin v. University of Kansas, 747 P.2d 811, 814 (Kan. 1987); Friesen v. Chicago, Rock Island & Pac. R.R., 524 P.2d 1141, 1148 (Kan. 1974); Muhn v. Schell, 413 P.2d 997, 1000 (Kan. 1966).  Whether a defendant's conduct constitutes wantonness necessarily depends on the facts and circumstances of each case.  Friesen, 524 P.2d at 1147; Muhn, 413 P.2d at 1000.

The district court found that Defendants were aware of the imminence of danger—accidents are inevitable in sprint car racing and fires can occur as a result of such accidents.  Defendants have not challenged this finding.  The district court also held, however, that there were genuine issues of material fact with respect to whether Defendants recklessly disregarded or were indifferent to the consequences of their actions, and submitted that issue to the jury.  Citing Friesen, Defendants argue that this holding is a misapplication of Kansas law.

Friesen involved a train-truck collision.  While inquiring whether the defendant railroad had exhibited the necessary mental attitude of reckless disregard in not making safety improvements at the railroad crossing, the Kansas Supreme Court stated that "it is

sound reasoning that a token effort to prevent a collision would not avoid liability under this phrase, while definite acts which materially lessen the chances of a collision would avoid liability." 524 P.2d at 1148. The facts indicated several steps taken by the railroad which were aimed at preventing a collision: (1) it had installed additional warning devices at the crossing, such as flashing lights and bells in addition to the crossbucks required by statute; (2) it was cooperating fully with the State Highway Commission in further upgrading the crossing protection, subject to approval by the Bureau of Public Roads; (3) the engineer was maintaining a proper lookout; (4) the engine whistle sounded; (5) the engine bell sounded; (6) the engine headlight was burning, even though it was daylight, making the engine more visible; and (7) the flashing lights and bells were operating. Id. The court found it undisputable that these acts constituted a material effort on the part of the railroad to prevent a collision. Id.

In this case, Defendants claim it is uncontroverted that they took the following steps to prevent injuries such as those suffered by Mr. Wolfgang: (1) they provided two trained and experienced firefighters; (2) those firefighters were clothed in appropriate firefighting gear or had it immediately available; (3) the firefighters had appropriate fire extinguishing equipment and agents; (4) they provided a wrecker to assist in rescue efforts; (5) they provided an ambulance with medical personnel that properly treated Mr. Wolfgang; and (6) Defendants' personnel immediately called for a helicopter.

Defendants argue that under Friesen, taking such affirmative steps negates the required mental attitude of reckless disregard or indifference as a matter of law. Defendants essentially argue that under Kansas law, taking any steps of a preventive nature automatically negates a finding of recklessness. Friesen is not so broad. A defendant's preventive measures must materially lessen the chances of the injury suffered by the plaintiff—a determination which "is so dependent upon the particular circumstances of each case as not to be susceptible of a general statement." Friesen, 524 P.2d at 1148. Defendants contend that their preventive measures were material because without them, Mr. Wolfgang would not have survived. In this case, however, materiality is not dependent on whether Mr. Wolfgang survived the accident. Rather, the question is whether, under the facts and circumstances of this case, a reasonable jury could only come to one conclusion—that Defendants' actions materially lessened the chances of a sprint car driver being severely burned due to the inability to rescue him after a crash.

Mr. Wolfgang presented evidence that Defendants were particularly aware of the increased risk of fire with methanol-fueled sprint cars running at Lakeside Speedway's asphalt track—all other Lakeside events featured gasoline-fueled cars, and sprint cars usually ran on dirt tracks where spilled methanol fuel is less likely to be ignited by sparks. His evidence showed that five to seven firefighters were normally present at Lakeside events. Thus, Mr. Wolfgang argues, providing only two firefighters when the risk of fire was heightened cannot be considered a material step. In fact, according to Mr. Wolfgang,

the lack of additional firefighters forced the two who were present to continually leave the burning car to run back to their truck for more fire extinguishers, further delaying the rescue. He presented evidence that the two firefighters did not know exactly what fire equipment was present or where it was located, had never trained together, were not coordinated in their rescue efforts, and were unfamiliar with the fuel line design used in sprint cars. Mr. Wolfgang also presented evidence that Defendants' "appropriate fire extinguishing equipment and agents" were in reality two pickup trucks with pry bars (not extrication equipment) and some hand-held fire extinguishers, some of which were not intended for a methanol fire. Mr. Wolfgang further argues that Defendants' remaining three steps were immaterial under the circumstances because the wrecker, ambulance and helicopter had nothing to do with putting out the fire which caused his burns.

From the facts and circumstances of this case, which we must view in the light most favorable to Mr. Wolfgang, Magnum Foods, 36 F.3d at 1503; Friesen, 524 P.2d at 1147, we cannot conclude that the evidence was "susceptible to no reasonable inferences supporting" Mr. Wolfgang. Haines, 82 F.3d at 1510. Because there was more than enough evidence upon which the jury could have properly found a verdict for Mr. Wolfgang, Magnum Foods, 36 F.3d at 1503, the district court correctly denied Defendants' motion for judgment as a matter of law.

Defendant World of Outlaws argues that the district court erred in denying its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) because it is merely a sanctioning body for sprint car races, and that as such, it owed no duty to provide or ensure adequate fire protection for sprint car drivers.  The district court ruled, however, that there was sufficient evidence to show that World of Outlaws owed a duty to Mr. Wolfgang to ensure safe racing conditions on the day of the crash.  The existence of a legal duty is a question of law to be determined by the court.  McGee v. Chalfant, 806 P.2d 980, 983 (Kan. 1991); Durflinger v. Artiles, 673 P.2d 86, 91 (Kan. 1983).  We review questions of law de novo, EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996), and we are not constrained by the district court's conclusions, but may affirm the district court on any legal ground supported by the record.  United States v. Taylor, 97 F.3d 1360, 1364 (10th Cir. 1996).

Defendants Mid-America Motorsports and World of Outlaws contracted to stage sprint car races at Lakeside Speedway on April 4 and 5, 1992.  They entered into a standard contract, written by World of Outlaws, which Mid-America Motorsports was not permitted to change or deviate from in any way.  In the section of the contract detailing the services World of Outlaws would provide, paragraph 10 states: "Designated World of Outlaws officials shall have the right to cancel any event due to unsafe racing conditions."  Mr. Wolfgang alleged that this provision created a contractual obligation on

- 13 -

the part of World of Outlaws to ensure that racing conditions were safe, and that as a participating driver, he was a third-party beneficiary to this provision in the contract. World of Outlaws counters that Mr. Wolfgang was not a third-party beneficiary to this contract, and that even if he was, the contract only covered the actual race days of April 4 and 5, and not the media day practice session on April 3 during which the crash occurred.

A person may sue for damages resulting from the breach of a contractual obligation, even though he was not a party to the contract and had no knowledge of it when made, if he was an intended beneficiary of that obligation. Cornwell v. Jespersen, 708 P.2d 515, 520 (Kan. 1985); Keith v. Schiefen-Stockham Ins. Agency, 498 P.2d 265, 273 (Kan. 1972). It is not necessary that the third party be identified in the contract or at the time of contracting in order to be an intended beneficiary. Noller v. GMC Truck & Coach Div., 760 P.2d 688, 697 (Kan. Ct. App. 1988), aff'd in part, rev'd in part, 772 P.2d 271 (Kan. 1989). Such a plaintiff is entitled to recover either in contract or in tort. Keith, 498 P.2d at 269.

In determining the intent of the contracting parties with respect to whether a third party is an intended beneficiary, we must apply the general rules for construction of contracts. Fasse v. Lower Heating & Air Conditioning, 736 P.2d 930, 933 (Kan. 1987); Cornwell, 708 P.2d at 521. The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous. Fasse, 736 P.2d at 933; Martin v. Edwards, 548 P.2d 779, 785-86 (Kan.

- 14 -

1976). However, we will consider evidence of the facts and circumstances surrounding its execution when the instrument is ambiguous on its face and requires aid to clarify its intent. Martin, 548 P.2d at 786. "A contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense the contract may be understood to reach two or more possible meanings." Fasse, 736 P.2d at 933.

The contract between World of Outlaws and Mid-America Motorsports merely states that World of Outlaws officials "shall have the right to cancel any event due to unsafe racing conditions." As an initial matter, we think it unassailable that the adequacy of fire protection for drivers is contemplated in the phrase "unsafe racing conditions." Second, World of Outlaws officials—the contracting party—are not actually racing on the track during an event, so "unsafe racing conditions" can only reasonably refer to the World of Outlaws member-drivers and the race-going public who may be trackside watching the race. Thus, the instrument could be construed as clearly and unambiguously expressing the parties' intent that "safe racing conditions" benefit drivers such as Mr. Wolfgang. See Fasse, 736 P.2d at 933-34 (contract provision made reference to "wages," with no mention of employees; court found it clear and unambiguous that employees were intended beneficiaries). It is certainly not a clear and unambiguous expression that the parties did not intend to benefit the race car drivers. See Noller, 772 P.2d at 275.

At best, for Defendants' sake, the contract is ambiguous. In that case, we look to the evidence adduced at trial to determine if the race car drivers were intended

- 15 -

beneficiaries. See Martin, 548 P.2d at 786. In his trial testimony, Ted Johnson, President of World of Outlaws, admitted that paragraph 10 imposed on World of Outlaws an obligation to ensure safe racing conditions, and that the drivers were the direct beneficiaries of that obligation. Mr. Johnson also acknowledged that the presence of adequate fire fighting equipment was one of the requirements for a race track to be safe, and admitted that World of Outlaws had a responsibility to its member drivers to bring them only to racetracks that had adequate fire fighting capabilities. Mr. Johnson further testified that if a track did not have adequate fire fighting capabilities as part of its safety equipment, World of Outlaws drivers would be unnecessarily exposed to excessive danger. Thus, whether we consider such extrinsic evidence to clarify this ambiguous contract provision, or construe the provision as a clear and unambiguous expression of the parties' intent, we reach the same conclusion: Mr. Wolfgang, as a World of Outlaws sprint car driver, was an intended beneficiary of the contract between World of Outlaws and Mid-America Motorsports. See Cornwell, 708 P.2d at 521 (not prejudicial to consider extrinsic evidence to interpret clear and unambiguous contract because court arrived at same result).

As to Defendants' argument that the contract only covered the race dates of April 4 and 5, but not the practice session on April 3, we are not persuaded. While the contract specifically states that the agreement is for the races on April 4 and 5, the contract as a whole unambiguously contemplates performance prior to the actual race dates. In

addition, the record clearly indicates that World of Outlaws was performing under the terms of the contract on April 3. For example, the contract required World of Outlaws to furnish press release materials and inform the national publications of the event. Ted Johnson testified that the April 3 practice session was a "media day," arranged specifically to promote the April 4 and 5 races. He testified that both he and the promoter agreed that it would be good to have the World of Outlaws drivers practice on the new asphalt track and take part in the press conference. The contract required World of Outlaws to provide drivers from its membership. Ted Johnson testified that he told his drivers he had arranged a practice session for them the day before the races and that many of those drivers attended that session. He also testified that he specifically requested Mr. Wolfgang to come to the practice session and to participate in the press conference. The contract provided that World of Outlaws would provide a flagman if requested, and Mr. Johnson testified that a World of Outlaws official served as a flagman for the practice session.

Finally, and most tellingly for purposes of Mr. Wolfgang's status as an intended beneficiary, under the terms of the contract, World of Outlaws was to cancel "any event" if the racing conditions were unsafe. Ted Johnson testified that his expectations regarding safe racing conditions in general, and fire protection in particular, were exactly the same at a practice session as they would be at a race. The record is clear that the parties intended that the drivers benefit from safe racing conditions both at the races

themselves and at the media day practice session held one day earlier to promote those races. We therefore hold that World of Outlaws owed a legal duty to its member-drivers to ensure that Lakeside Speedway had adequate fire protection on the day Mr. Wolfgang crashed.

## II.

### A.   Negligence Instruction

Defendants argue that the district court erred in refusing to give a jury instruction which defined negligence. In a diversity case, the substance of a jury instruction is a matter of state law, but the grant or denial of a tendered instruction is governed by federal law. City of Wichita v. United States Gypsum Co., 72 F.3d 1491, 1494-95 (10th Cir. 1996). We review the district court's refusal to give a particular jury instruction for abuse of discretion. United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996). In assessing whether the court properly exercised that discretion, we must examine the instructions as a whole to determine whether they sufficiently cover the issues, facts and evidence in the case. Id. The ultimate question of whether the jury was properly instructed is a question of law which we review de novo. Id.; United States v. Lee, 54 F.3d 1534, 1536 (10th Cir.), cert. denied, 116 S. Ct. 247 (1995).

Because Defendants had already been granted summary judgment on Mr. Wolfgang's negligence claim, by operation of the Release, negligence was no longer an

- 18 -

issue in the case. The only remaining standard of care was wantonness, on which the jury was properly instructed. Defendants argue, however, that based on the conduct evidence admitted at trial, the jury could have concluded that they were only negligent, but not wanton, and therefore not liable in this case. Since it was not instructed on negligence, Defendants contend the jury simply labeled any wrongful conduct "wanton," regardless of whether such a label was warranted. Their argument is essentially that the jury failed to follow the court's wantonness instruction—an instruction which Defendants have not challenged. When the trial court's instruction accurately states the applicable law, however, it is fundamental that we presume the jury to have correctly followed that instruction. Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985); Parker v. Randolph, 442 U.S. 62, 73 (1979).

Defendants argue that negligence was not entirely out of the case, because it was available to them as a defense to Mr. Wolfgang's wantonness claim. Citing Perlmutter v. United States Gypsum Co., 4 F.3d 864, 872 (10th Cir. 1993), they contend that failure to instruct the jury on this "defense" was reversible error. Defendants reliance on Perlmutter is misplaced. In Perlmutter, a products liability action, the defendant had presented evidence of an unforeseeable intervening cause. Id. We held that because an unforseeable intervening cause is a defense to a products liability action, it was error for the court to refuse the defendant's tendered instruction. Id.

- 19 -

In this case, however, negligence is not a defense to a wanton conduct claim. Rather, negligence was an alternate theory under which Mr. Wolfgang might have recovered. The Release was the only defense in the case—a defense which Defendants successfully invoked. We hold that the district court did not abuse its discretion in refusing Defendants' tendered negligence instruction because negligence was not an issue in the case. Viewing the instructions as a whole, we are satisfied that the district court's instructions accurately stated the law based on the facts and evidence presented at trial.

### B.     Exclusion of Evidence

Defendants claim that the district court erred in excluding evidence of admissions made by Mr. Wolfgang which were contained in audio and video tapes of speeches he gave after his accident. The district court allowed Defendants to use the transcript of one of the tapes to cross-examine Mr. Wolfgang, but refused to admit the tapes themselves, ruling that they would be unfairly prejudicial because they went to Mr. Wolfgang's comparative fault, an issue not in the case. Fed. R. Evid. 403. The decision to exclude evidence under Rule 403 is within the sound discretion of the trial court, and will not be reversed by this court absent a clear abuse of discretion. Getter v. Wal-Mart Stores, 66 F.3d 1119, 1124 (10th Cir. 1995), cert. denied, 116 S. Ct. 1017 (1996). Under this standard, we will not disturb the district court's decision absent a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of

permissible choice in the circumstances." Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir. 1995) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553 (10th Cir. 1991)).

Defendants argue that the fact that the audio and video tapes may also be relevant to an issue not in the case does not preclude their use if they are relevant for another, permissible purpose. They argue that the tapes are admissions of a party-opponent, admissible under Fed. R. Evid. 801(d)(2)(A), and that these admissions are highly relevant because they rebut Mr. Wolfgang's theory of causation. Citing Auto-Owners Ins. Co. v. Jensen, 667 F.2d 714, 722-23 (8th Cir. 1981), Defendants contend that it was error to exclude the tapes as substantive evidence even though they were allowed to use a transcript of the statements on cross-examination. In Auto-Owners, however, the district court ruled that certain tapes were not admissible because the statements contained therein were not subject to cross-examination when made. Id. at 722. The Eighth Circuit reversed because Rule 801(d)(2)(A) does not require the availability of contemporaneous cross-examination for a statement to be admissible as substantive evidence. Id. Neither court did a Rule 403 analysis.

In this case, the district court's decision to exclude the tapes was based on a determination that the tapes were unfairly prejudicial because they would improperly inject the issue of Mr. Wolfgang's fault into the jury's deliberations. Thus, even though the tapes may have met the requirements for admissibility under Rule 801(d)(2)(A), this

does not guarantee their admission in every case. Relevant evidence may be excluded if it fails the Rule 403 analysis. United States v. Pinalto, 771 F.2d 457, 459 (10th Cir. 1985). That determination is left to the sound discretion of the trial court. Id. at 460. Here, the district court allowed Defendants to use the transcript of one of the tapes to cross-examine Mr. Wolfgang, but Defendants chose not to do so. Defendants chose not to recall Mr. Wolfgang, nor did they attempt to introduce the tapes through any other witness during their case in chief. Only after they were finished with all their witnesses did they attempt to introduce the tapes into evidence, which the district court held would be unfairly prejudicial. On this record, we cannot say that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. Boughton, 65 F.3d at 832. The district court did not abuse its discretion in excluding the tapes.

Defendants also claim that several pieces of evidence purporting to show the totality of the circumstances surrounding the crash were improperly excluded. They argue that the district court should have admitted evidence of (1) the Release; (2) Mr. Wolfgang's fault; (3) Mr. Wolfgang's failure to use a headnet; (4) the use of a plastic fuel filter; and (5) Mr. Wolfgang's disregard for the checkered flag which caused him to take an extra lap at high speed. The district court excluded this evidence because it primarily concerned assumption of risk and comparative fault, issues not in the case.

Defendants argue that under State v. Gordon, 549 P.2d 886, 895 (Kan. 1976), even though this evidence touched upon Mr. Wolfgang's own fault, it should have been admitted as one of the circumstances to be considered in determining the issue of causation. However, in State v. Betts, 519 P.2d 655 (Kan. 1974), cited in Gordon, the Kansas Supreme Court held that in a wantonness case, liability could only be negated if the plaintiff's actions were the sole cause of his injuries. Id. at 661. Thus, if the evidence does not support such a finding, the trial court is not required to instruct the jury to consider the plaintiff's actions. Id. In this case, Defendants were already granted full use of the Release as a defense to Mr. Wolfgang's negligence claims, and it was irrelevant to the claim of wanton conduct. Mr. Wolfgang admitted pretrial that the accident itself was his fault, but the issue in the case was not the cause of his accident, but the cause of his extensive burns. Thus, evidence of Mr. Wolfgang's fault with regard to the crash was not only irrelevant, but also highly prejudicial. Mr. Wolfgang's failure to use the headnet contributed to his head injuries, not his burns, and he admitted pretrial that he was responsible for his head injuries and was not seeking recovery for them. The use of a plastic fuel filter could not have been the sole cause of Mr. Wolfgang's injuries, particularly in light of the evidence of Defendant's inadequate fire protection capabilities. Finally, taking an extra lap at speed was irrelevant to whether Defendants adequately responded to the fire which resulted from that crash.

Under Kansas law, a finding of wantonness requires consideration of all the facts and circumstances surrounding the crash. Friesen, 524 P.2d at 1147. This does not mean, however, that the district court must admit irrelevant evidence or neglect its role in determining when relevant evidence is to be excluded as unfairly prejudicial. The district court did not abuse its discretion in refusing to admit the above evidence.

## III.

### A. Loss of Service Damages

Kansas imposes a statutory cap of $250,000 on non-economic damages which may be recovered in personal injury actions. Kan. Stat. Ann. § 60-19a02 (1995). Defendants argue that this cap was exceeded because the jury awarded Mr. Wolfgang $150,000 for past non-economic loss and $100,000 for future non-economic loss, along with $65,000 for loss of services. Defendants contend the district court erred in determining that the $65,000 loss of services damages were wholly economic in nature and therefore not subject to the cap. We review the district court's determination of state law de novo. Hays v. Jackson Nat'l Life Ins., 105 F.3d 583, 587 (10th Cir. 1997).

A married person may recover for the "loss or impairment of his or her ability to perform services in the household and in the discharge of his or her domestic duties." Kan. Stat. Ann. § 23-205 (1995). In Cleveland v. Wong, 701 P.2d 1301 (Kan. 1985), the Kansas Supreme Court stated that the terms "services" and "domestic duties"

encompassed both the performance of acts of manual labor about the house—taking out the trash, making repairs, etc.—and the performance of matrimonial, conjugal and connubial acts and duties. Id. at 1312 (citing Clark v. Southwestern Greyhound Lines, 58 P.2d 1128, Syl. ¶ 1 (Kan. 1936)). Thus, there is an economic and non-economic component to loss of services damages. These dual components are reflected in Kansas pattern jury instruction 9.02:

> In arriving at the amount of recovery, you will take into consideration the loss or impairment of plaintiff's ability to perform services in the household and in the discharge of his domestic duties, and the loss or impairment of plaintiff's companionship, aid, assistance, comfort and society.

K.S. P.I.K. Civ. 2d 9.02 (Supp. 1994) (emphasis added).

In this case, the district court specifically modified this instruction, omitting the underlined portion above and submitting only the first part of the instruction to the jury. According to the court and Mr. Wolfgang, this removed the non-economic component of loss of services damages from the jury's consideration. Citing Cleveland, 701 P.2d at 1312, however, Defendants argue that the economic and non-economic components of loss of services damages are not separable. Further, they argue that removing the underlined phrase does not change the fact that the instruction as given still included the terms "services" and "domestic duties," terms which have a long history in Kansas of encompassing non-economic factors. Their arguments must fail for two reasons.

- 25 -

First, Defendants' reliance on Cleveland is misplaced.  In Cleveland, the issue was whether the jury could be instructed to consider "mental anguish, emotional upset, anxiety, and suffering" in awarding damages for loss of consortium under § 23-205.  Reaffirming its holding in Clark, the Kansas Supreme Court upheld the instruction because § 23-205 allowed damages for the loss of social obligations, affection, and sexual relations.  Cleveland, 701 P.2d at 1312.  Cleveland did not hold, as Defendants suggest, that such non-economic damages are always included in a loss of services claim under § 23-205.

Second, the fact that Kansas courts have held that the terms "services" and "domestic duties" encompass such non-economic factors as mental anguish and sexual relations, for purposes of allowing such evidence to be presented in appropriate cases, does not mean a jury also understands these terms in this manner.  Kansas recognized as much when it adopted the language in P.I.K. Civ. 2d 9.02.  That language specifically separates loss of services damages into its economic and non-economic components.  Because the district court deleted the non-economic portion from its jury instruction, our only inquiry is whether there was evidence of loss of economic services to support the jury's award.  Wentling v. Medical Anesthesia Servs., 701 P.2d 939, 945 (Kan. 1985); Marley v. Chemical Waste Mgmt., 1993 WL 390055, at *3 (D. Kan. Sept. 27, 1993).

A plaintiff in a personal injury action is not required to prove his losses to a mathematical certainty.  Wentling, 701 P.2d at 945.  "In such cases, the triers of fact are

- 26 -

presumed to be capable of converting the losses into monetary equivalents on the basis of their own experiences and knowledge." Id. (quotation omitted). In this case, the evidence of Mr. Wolfgang's inability to help his wife with their four children or do any work around the house was sufficient to give the jury a basis, using their own experiences and knowledge, to assign a monetary value to those lost services. Accordingly, we find that the $65,000 awarded by the jury for loss of services damages was economic in nature, and therefore is not subject to the cap set forth in § 60-19a02.

### B. Medical Expenses

In response to Defendants' post-trial motion to amend the judgment, the district court reduced the jury's $250,000 award of past medical expenses by $31,590.90. Defendants seek to have the jury's award reduced by an additional $70,460.48 because this portion of the award is not supported by the evidence. Specifically, they argue that of the $250,000 awarded by the jury, a proper foundation was laid for only $147,948.62. This was the amount of medical bills incurred at the University of Kansas Medical Center (KU), for which there was testimony that the bills were for treatment of Mr. Wolfgang's burns only, and that they were reasonable and necessary for that treatment. According to Defendants, the district court abused its discretion in admitting evidence of other bills—some of which contained treatment for non-burn-related injuries (not compensable

in this case), and which were not supported by testimony indicating that the treatments noted therein were necessary.

Whether a sufficient foundation was laid for such evidence is a determination which is within the sound discretion of the trial court, and it will not be disturbed absent a clear showing of abuse. United States v. Agnew, 931 F.2d 1397, 1409-10 (10th Cir.), cert. denied, 502 U.S. 884 (1991). The district court undertook a careful review of the evidence supporting past medical expenses. It found that $6,246.83 of the medical expenses clearly related to noncompensable head and neck injuries, and $25,344.07 represented a discrepancy between the actual medical bills and the summary of those bills which was sent to the jury. After this careful review, the court concluded that the remaining medical expenses for Mr. Wolfgang's burns were supported by medical records and testimony. We have reviewed the record and are satisfied that the district court did not clearly abuse its discretion in admitting the challenged medical records.

## C.    Newly Discovered Evidence

Defendants contend that the district court erred in denying their motion for a new trial based on newly discovered evidence of Mr. Wolfgang's ability to earn money as a race car driver. They assert that Mr. Wolfgang raced successfully on two occasions shortly after receiving the jury's verdict, thus refuting his claim that his racing career was over. The denial of a motion for new trial is within the discretion of the trial court and

will not be disturbed on appeal absent a manifest abuse of discretion.  Joseph v. Terminix Int'l Corp., 17 F.3d 1282, 1285 (10th Cir. 1994).  In order to obtain a new trial based on newly discovered evidence, the moving party must show that (1) the evidence was newly discovered since the trial; (2) he was diligent in discovering the evidence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the newly discovered evidence would have been material; and (5) a new trial with this newly discovered evidence would probably produce a different result.  Id. (citing Graham v. Wyeth Labs., 906 F.2d 1399, 1416 (10th Cir.), cert. denied, 498 U.S. 981 (1990)).

The district court denied Defendants motion because it considered this evidence truly new evidence, which was not in existence at trial.  Thus, it failed the requirement that the newly discovered evidence must have been in existence at the time of trial but not known to the movant.  American Motorists Ins. Co. v. General Host Corp., 120 F.R.D. 129, 132 (D. Kan. 1988); 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §2808, 86-88 (1995).  Defendants argue, however, that the evidence in question was of Mr. Wolfgang's ability to earn money racing, which was in existence at the time of trial.  According to Defendants, they believed Mr. Wolfgang could still earn a living as a race car driver, and tried to prove it at trial, but Mr. Wolfgang deliberately chose not to race because it would jeopardize his case.  Thus, their inability to discover this evidence was excusable, and when Mr. Wolfgang raced eight days after trial, that evidence became newly discovered.

Even if Defendants' characterization is correct, however, a new trial is not warranted. Mr. Wolfgang himself presented evidence that he had raced after his accident, and had some success, but in a lesser class of car against lesser "weekend" competition. The fact that he raced on two occasions after trial, also in this lesser class of car, is merely cumulative of evidence already presented. In addition, this evidence is immaterial to the issue before the jury, which was not whether Mr. Wolfgang could ever race a car again, but whether he could earn a living doing so. While Mr. Wolfgang's car earned a total of $2,200.00 in these two post-trial races, Mr. Wolfgang himself received no compensation. For the same reason, we certainly cannot say that the admission of such evidence would probably have led to a different result. The district court did not abuse its discretion in denying Defendants' motion for a new trial.

AFFIRMED.