**PETER'S CLOTHIERS, INC., Plaintiff,**

v.

**NATIONAL GUARDIAN SECURITY SERVICES CORP. d/b/a Security Link from Ameritech, Inc., Defendant.**

Civil Action No. 97–2038–GTV.

United States District Court,
D. Kansas.

Feb. 4, 1998.

Dan Biles, Randall L. Manvitz, Gates, Biles, Shields & Ryan, P.A., Overland Park, KS, Stephen M Halbeisen, Cozen & O'Connor, Dallas, TX, for Peter's Clothiers, Inc.

Thomas M. Sutherland, Holbrook, Heaven & Fay, P.A., Kansas City, KS, for Kessinger/Hunter & Co., Inc.

Robert W. McKinley, Tedrick Addison Housh, III, Karen Z. Schutter, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for National Guardian Sec. Services Corp.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this diversity of citizenship action alleging that defendant National Guardian Security Services Corporation ("National Guardian") is liable for damages under theories of negligence and breach of implied warranty based on the failure of a security alarm system at plaintiff's retail clothing store. The case is before the court on National Guardian's motion for summary judgment (Doc. 45) pursuant to Fed.R.Civ.P. 56(b). For the reasons stated below, the motion is granted.

## I. Factual Background

The following facts are either uncontroverted or based on evidence submitted in the summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

In 1989, Peter's Clothiers, Inc. ("Peters") opened a retail clothing store in Overland Park, Kansas and contracted with an Independence, Missouri burglar alarm company for the installation of a security system at the store. Between 1989 and 1993, Peters suffered four thefts, sustaining losses between $25,000 and $75,000 on each occasion.

In 1993, Peters began to renegotiate its lease with Kessinger/Hunter & Company, Inc., the property management company acting on behalf of the owner of Peters' Overland Park premises. According to the deposition testimony of Peters' president, Spiro Arvanitakis, Peters was hesitant to renew its lease at the Overland Park location because of security concerns. In the course of this renegotiation, Peters asked Kessinger/Hunter to insure it in case of further loss. Kessinger/Hunter refused this request, but offered to increase the security at the Overland Park store. After these security concerns were addressed, Peters agreed to a new lease that included a promise by Kessinger/Hunter to provide up to $20,000 in improvements to the internal and external security measures at Peters' store.

In August 1993, a Kessinger/Hunter representative asked Clay Shropshire of National Guardian to visit Peters' Overland Park store. The purpose of this visit was to provide suggestions for upgrading Peters' existing security system. In September 1993, Shropshire provided Peters and Kessinger/Hunter with a security system proposal. Shropshire then discussed the proposal with the owners of Peters, and the parties determined which improvements would be made to Peters' current system.

In October 1993, Kessinger/Hunter contracted with National Guardian to upgrade the security system at Peters' store. Although Peters was not a signatory to the contract, the contract provided that a security system would be installed at Peters' Overland Park store and that Peters would assume the expense of the burglar alarm monitoring after one year. The contract also contained several provisions disclaiming warranties and liability on National Guardian's part, as well as overall limitations on liability. The following provision is the most pertinent:

2. It is understood and agreed by and between the parties hereto that [National Guardian] is not an insurer, nor is this Agreement intended to be an insurance policy. Insurance, if any, will be obtained by the Subscriber. Charges are based solely upon the value of the System and/or the value of the services provided and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The amounts payable by the Subscriber are not sufficient to warrant [National Guardian] assuming any risks of consequential, collateral, incidental or other damages to the Subscriber due to the System, its installation or the use thereof, or any deficiency, defect or inadequacy of the System or services or due to [National Guardian]'s negligence or failure to perform, except as specifically provided for in this Agreement. Subscriber does not desire this Agreement to provide for the liability of [National Guardian] and Subscriber agrees that [National Guardian] shall not be liable for loss or damage due directly or indirectly to any occurrences or consequences therefrom which the System or service is designed to detect or avert. From the nature of the System provided hereunder or the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any which may proximately result from the active or passive negligence of, or a failure on the part of, [National Guardian] to perform any of its obligations hereunder, or the failure of the System to properly operate. If [National Guardian] should be found liable for loss or damage to a failure on the part of [National Guardian] or the System or services, in any respect, such liability shall be limited, solely with regard to any RECURRING SERVICE transaction, to an amount equal to fifty percent of one year's recurrent service charge or the amount of $1,000, whichever

is less, or solely with respect to a DIRECT SALE transaction, to an amount equal to the purchase price of the equipment with respect to which the claim is made, and regardless of the type of transaction, this liability shall be exclusive. The provisions of this paragraph shall apply in the event loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from the performance or non-performance of the obligations set forth by the terms of this Agreement or from the active or passive negligence of [National Guardian], its agents or employees. In the event that Subscriber desires [National Guardian] to assume greater liability under this Agreement, a choice is hereby given of obtaining full or limited liability by paying an additional amount in proportion to the amount of liability [National Guardian] will assume. If this option is chosen, an addition rider shall be attached to this Agreement setting forth the additional liability of [National Guardian] and the additional charge.

Although National Guardian installed the security system in Peters' store at Peters' request, Peters alleges that it was unaware that National Guardian and Kessinger/Hunter had entered into a contract authorizing the installation and monitoring of Peters' security system. In fact, Spiro Arvanitakis alleges that he was unaware of the contract's existence until the commencement of this litigation.

In the months following the installation of the upgraded system, National Guardian performed repairs to the system on at least three occasions. On these occasions, Peters employees signed a service report confirming that National Guardian had performed the requested maintenance services.

In the evening of December 24, 1994 or the early morning of December 25, 1994, burglars entered Peters' Overland Park store by force through the rear door and disabled the security system by tearing the central processing unit off the wall. The burglars stole clothing and other merchandise worth approximately $100,000.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. See id. at 254.

## III. Discussion

Peters alleges that National Guardian is liable under theories of negligence and breach of implied warranty of workmanlike performance with respect to the design and installation of the security system at Peters' Overland Park store. Peters further claims that it was not a party to the contract and, therefore, is not bound by the provisions limiting National Guardian's liability.

National Guardian contends that its liability is limited by the language of the contract under two theories. The company first argues that Peters is a third-party beneficiary to the contract.[1] Under this third-party beneficiary theory, National Guardian contends that Peters may enforce its rights under the contract, but may recover only the extent allowed under the limitation language in the contract. National Guardian's second argument is that Kessinger/Hunter entered into the contract on behalf of Peters. In effect, National Guardian contends that either Kessinger/Hunter had apparent authority to bind Peters to the contract for the security system or that Peters ratified the contract by accepting the contract's benefits. Because the court finds that Peters is a third-party beneficiary to the contract, National Guardian's agency argument need not be addressed.

*A. Third–Party Beneficiary*

■ Under Kansas law, "[a] person may sue for damages resulting from the breach of a contractual obligation, even though he was not a party to the contract and had no knowledge of it when made, if he was an intended beneficiary of that obligation." *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997). Further, "it is not necessary that the third party be identified in the contract or at the time of the contracting in order to be an intended beneficiary." *Id.* The court may determine whether a party is a third-party beneficiary by considering the facts and circumstances surrounding the execution of the contract. *Id.*

■ Peters claims that it was not a third-party beneficiary to the contract because it was not aware that the contract existed and because Kessinger/Hunter did not intend that Peters should have any rights under the contract. The court disagrees. It is undisputed that the purpose of the contract was to upgrade and monitor the security system protecting Peters' Overland Park store.

Agents of Peters met with National Guardian and selected the various components that were to comprise the upgraded system. Furthermore, when the system was in need of repair, National Guardian, as required by the contract, went to Peters' store and made any necessary adjustments to the system. These facts show that National Guardian, Kessinger/Hunter, and Peters all recognized that Peters was a third-party beneficiary of the contract and that Peters accepted the benefits that flowed from the contract.

■ Because Peters is a third-party beneficiary to the contract, it may bring an action sounding in either tort or contract. *Id.* Because Peters has accepted the benefits of the contract, its action is subject to the applicable provisions of the original contract signed by Kessinger/Hunter and National Guardian. Under Kansas law, "before the beneficiary may accept the benefits of the contract, he must accept all of its implied, as well as express, obligations." *Kelly v. Grimshaw,* 167 P.2d 627, 629 (Kan.1946). "If the beneficiary accepts [the benefits of a contract], he adopts the bad as well as the good, the burden as well as the benefit." *Id.*

National Guardian argues that because Peters accepted the benefits of the contract for the installation and monitoring of the security system at its Overland Park store, Peters' recovery is limited by the language in the contract. Specifically, National Guardian points to the provisions limiting its liability to fifty percent of one year's recurrent service charge or to the purchase price of the equipment implicated in Peters' claim, depending upon whether the transaction is considered a recurring transaction or a direct purchase of equipment.

In response, Peters contends that its recovery is not limited because it is not claiming any rights under the contract. Again, the court disagrees. Any benefits or protec-

---

1. On November 7, 1997, National Guardian filed a *motion seeking leave to amend the pretrial* order. Defendant sought to amend its factual and legal defenses to include a defense based on "Limitation of Liability" provisions contained in certain "Service Reports" prepared by National Guardian's employees at the time of the service calls in 1994 and a defense based on the theory that plaintiff is a third-party beneficiary of the

Alarm Services Agreement. The court has considered National Guardian's defense theory that plaintiff is a third-party beneficiary. Both sides have fully briefed this issue in the their respective summary judgment papers, and plaintiff is not prejudiced by the court's consideration of this defense. Accordingly, defendant's motion (Doc. 47) is granted, and the pretrial order is considered modified.

tions inuring to Peters and any duties owed by National Guardian necessarily stem from the contract. While Peters may sue National Guardian for negligence or breach of certain implied warranties based on the contract, the contract simultaneously limits the amount of Peters' recovery. As stated above, Peters cannot accept the contract's benefits—the upgraded security system and the system's monitoring and repair—while refusing the contract's burdens—the provisions limiting National Guardian's liability. To hold otherwise would allow third-party beneficiaries to benefit from the agreed upon terms of a contract and then circumvent these very terms merely by sounding their claims in tort rather than contract.

■ The court also finds that limiting National Guardian's liability comports with the public policy of Kansas. In Kansas, parties who knowingly enter into a contract, as Peters did by accepting the benefits of the contract, are bound by the contact's limiting language unless it is found to be unconscionable. *See Corral v. Rollins Protective Servs.*, 240 Kan. 678, 732 P.2d 1260, 1263 (1987). Considering the small fee National Guardian received, all parties to this contract understood that National Guardian was not insuring all the merchandise located at Peters' store. *See id.* at 1264. The court concludes that the liability limiting language in the contract is not unconscionable; it avoids placing National Guardian in the position of being an insurer of Peters' property.

## B. *Limitations on Damages*

From the record presented, the court is unable to determine the exact limitations on Peters' potential recovery. The contract provides that National Guardian's liability is limited as follows:

> If NGS should be found liable for loss or damage to a failure on the part of NGS or the System or services, in any respect, such liability shall be limited, solely with regard to any RECURRING SERVICE transaction, to an amount equal to fifty percent of one year's recurrent service charge or the amount of $1,000, whichever is less, or solely with respect to a DIRECT SALE transaction, to an amount equal to the purchase price of the equipment with respect to which the claim is made, and

> regardless of the type of transaction, this liability shall be exclusive.

Peters' liability is either limited to fifty percent of one year's recurrent service charge—in this case, $180.00—or to an amount equal to the purchase price of the equipment that allegedly failed—in this case, $1,972.24. Peters' potential recovery, therefore, is limited to maximum amount of $1,924.72.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 45) is granted as to any claim for damages greater than $1,972.24.

IT IS FURTHER ORDERED that defendant's motion to amend the pretrial order (Doc. 47) is granted.

Copies of this memorandum and order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**