**UNITED PHOSPHORUS, LTD., Plaintiff,**

v.

**MIDLAND FUMIGANT, INC., Defendant.**

**UNITED PHOSPHORUS, LTD. and Inventa Corporation, Plaintiffs,**

v.

**MIDLAND FUMIGANT, INC., Donald F. Fox, Phos–Fume Chemical Company and Kaw Valley, Inc., Defendants.**

Civil Action Nos. 91–2133–GTV, 95–2267–GTV.

United States District Court, D. Kansas.

July 7, 1998.

motion.

2. In light of this conclusion, the court need not address the other issues raised by defendant's

Floyd R. Finch, Jr., Shelley A. Runion, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for Plaintiffs.

John C. Tillotson, Murray, Tillotson & Nelson, Chtd., Leavenworth, KS, for Defendants.

### MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

This case comes before the court on defendants' motion for judgment as a matter of law or, in the alternative, for a new trial (Doc. 360). For the reasons set forth below, the motion is granted to the extent that plaintiffs' damages on their fraud claim are reduced to $67,694.03. The motion is denied in all other respects.

### I. Background

United Phosphorus, Ltd. ("United") originally filed this trademark infringement action against Midland Fumigant, Inc. ("Midland") in April 1991 alleging that Midland had infringed United's Quick–Phos mark, fraudulently registered a trademark with the United States Patent and Trademark Office, and engaged in unfair competition (case number 91–2133). Although the parties settled the dispute in October 1991, Judge Earl E. O'Connor vacated the settlement agreement in January 1995 after concluding that Midland had not performed according to the terms of the agreement. Five months later, United and its subsidiary, Inventa Corporation ("Inventa"), filed a second lawsuit against Midland, Phos–Fume Chemical Company, Kaw Valley, Inc., and Donald Fox, the president of the three corporations (case number 95–2267). In the June 1995 case, which the court consolidated with the revived April 1991 suit, plaintiffs raised claims of common law fraud and Racketeer Influenced and Corrupt Organizations Act ("RICO") violations.

On October 22, 1997, after a two and one-half week trial, the jury returned a verdict in favor of United on the company's trademark infringement, fraudulent trademark registration, and unfair competition claims against Midland. The jury awarded $761,866 in damages on those claims. The jury also determined that Donald Fox had engaged in fraudulent conduct toward United and Inventa and awarded the two companies $1,314,063 in compensatory damages on the fraud claim.[1] Upon the jury's recommendation, the court, acting under Kansas law, then assessed $653,217 in punitive damages against Fox. Defendants now move for judgment as a matter of law or, in the alternative, for a new trial.

### II. Standards

In ruling on a renewed motion for judgment as a matter of law following a jury

---

1. The jury concluded that defendants had not committed any RICO violations.

verdict,[2] the court has three options available: allow the judgment to stand, order a new trial, or direct an entry of judgment in favor of the moving party. Fed.R.Civ.P. 50(b)(1). Judgment as a matter of law is warranted only if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). The jury's verdict must remain undisturbed if there is evidence, viewed in a light most favorable to the non-moving party, upon which the jury could have returned a verdict in favor of the non-movant. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 297, 136 L.Ed.2d 216 (1996). The court must not weigh the evidence, pass on the credibility of witnesses, or substitute its own judgment for that of the jury. *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1522 (10th Cir.1997).

■ Motions for new trial are regarded with disfavor and should "only be granted with great caution." *United States v. Thornbrugh*, 962 F.2d 1438, 1443 (10th Cir.1992). No error in the admission or exclusion of evidence or in any ruling at trial is sufficient grounds for granting a new trial unless such error affected the substantial rights of the moving party. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir.1978). Ultimately, the decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

### III. Discussion

#### A. Motion for Judgment as a Matter of Law

##### 1. Fraudulent Registration of Trademark

Defendants first argue that Midland's registration of the Quick-Phos mark with the United States Patent and Trademark Office was not fraudulent and thus could not have been violative of 15 U.S.C. § 1120. Defendants contend that although Midland knew United *claimed* ownership of the Quick-Phos mark, there is no evidence that Midland knew United actually had the exclusive rights to the mark. The court disagrees.

■ As the court noted in Instruction 21, to prove a claim of fraud in the procurement of a federal trademark, a plaintiff must demonstrate: (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the registrant's intention to induce another to act or refrain from acting in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. *See Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 874 (10th Cir.1995) (citing *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 473 (10th Cir.1988)). Only the second element is at issue here.

■ Defendants are correct that trademark applicants need only state to the best of their knowledge and belief that no other person or entity has the right to use the mark in commerce. *San Juan Prods.*, 849 F.2d at 472. The applicant's subjective belief is the pertinent issue. *Stanfield*, 52 F.3d at 874. "The burden of proving fraudulent procurement of a registration is heavy. Any deliberate attempt to mislead the Patent Office must be established by clear and convincing evidence." *Id.* (citations and internal alterations omitted). Contrary to defendants' argument, the record contains ample evidence to support the jury's finding of liability on this claim.

All evidence presented at trial regarding Midland's trademark application came from Donald Fox and Robert Shockey. It is obvious that the jury found the testimony of neither individual to be credible. Despite their awareness that United claimed the Quick-Phos trademark, that Midland had

---

**2.** To prevail on a Fed.R.Civ.P. 50(b) post-trial motion for judgment as a matter of law involving issues of factual sufficiency, a party first must have asserted the motion prior to the submission of the case to the jury. *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir.1997). Failure to do so results in a waiver of the issue. *Id.*

purchased Quick–Phos from United and re-sold it in this country, and that Midland had deliberately relabeled L–Fume aluminum phosphide as Quick–Phos, both Fox and Shockey insisted that no other entity had the right to use the Quick–Phos mark in commerce. Midland sought no legal advice with respect to the company's ownership of the Quick–Phos mark in the United States and clung to ownership theories based on agency principles that United unequivocally refuted.

Relying on *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2478, 138 L.Ed.2d 987 (1997), defendants proposed an instruction articulating the rebuttable presumption that arises over ownership of trademarks between foreign manufacturers and American distributors. The court agreed with the proposal and instructed jurors that "in determining which party owns the mark, you may consider several factors including which party formulated and first affixed the mark to the product, which party's name appeared with the mark, which party maintained quality and uniformity of the product, and with which party the public identified the product." *See* Instruction 17. The jury determined that these factors tilted in favor of United, *see* Verdict Answer 1, a decision fully comporting with the evidence presented at trial.

■ Defendants rely heavily in their motion on the fact that United had no federal or state trademark registration for the name Quick–Phos at the time of the infringement. As plaintiffs point out, however, registration is not a dispositive issue. A trademark is not created by registration. *San Juan Prods.*, 849 F.2d at 474. "While federal registration triggers certain substantive and procedural rights, the absence of federal registration does not unleash the mark to public use. The Lanham Act protects unregistered marks as does the common law." *Id.* The court pointed out this fact in Instruction 17. In sum, the jury properly found that Midland's registration of the Quick–Phos mark with the Patent and Trademark Office was fraudulent.

### 2. Double Recovery on Trademark Infringement and Unfair Competition Claims

Defendants next contend that the jury's award of $761,866 to plaintiffs on their trademark infringement and unfair competition claims constitutes a double recovery in violation of 15 U.S.C. § 1117(a). Specifically, defendants maintain that jurors improperly awarded plaintiffs both Midland's profits as well as plaintiffs' own lost profits.

■ Section 1117(a) is the Lanham Act's general damages provision. This statute provides in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under [15 U.S.C. § 1125(a) ], shall have been established in any civil action ..., *the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action ....* In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. *Such sum in either of the above circumstances shall constitute compensation and not a penalty.*

15 U.S.C. § 1117(a) (emphasis added). The relief afforded by this statute is designed to make Lanham Act violations unprofitable; it is not intended to serve any punitive purpose. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir.1994); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir.1994); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 607–08 (3d Cir.1978).

■ The court concurs with defendants that a plaintiff victimized by trademark infringement generally cannot recover its own lost profits in addition to the defendant's profits. *See Big O Tire Dealers, Inc. v.*

*Goodyear Tire & Rubber Co.,* 408 F.Supp. 1219, 1241 (D.Colo.1976), *aff'd as modified,* 561 F.2d 1365 (10th Cir.1977); *see also BASF Corp.,* 41 F.3d at 1095–96; *Nintendo of Am., Inc. v. Dragon Pac. Int'l,* 40 F.3d 1007, 1010 (9th Cir.1994); 5 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:73 (4th ed.1997). In this case, however, there is no solid evidence of a double recovery. Defendants' theory of overcompensation is predicated on speculation as to how the jury calculated its $761,866 damage award.

■ Defendants presume that the jury's $761,866 award represented a combination of plaintiffs' lost profits of $376,346 and Midland's profits of $385,520. Although that scenario is conceivable, it is by no means certain. The jury heard evidence of far more than $761,866 in damages from which it could have made an award. Indeed, plaintiffs introduced documents and testimony suggesting their damages exceeded $4.1 million on the trademark infringement, fraudulent registration, and unfair competition claims. The court will not disturb a verdict based on speculation as to how the jury arrived at a particular result. *Midwest Underground Storage, Inc. v. Porter,* 717 F.2d 493, 501 (10th Cir.1983).

### 3. Double Recovery on Fraud Claims

■ Defendants further argue that the jury's award of fraud damages against Donald Fox and his related companies are subsumed by the damages awarded on the trademark infringement, fraudulent registration, and unfair competition claims against Midland. Plaintiffs respond that defendants waived this argument by failing to object to the jury instructions prior to submission of the case to the jury. Plaintiffs also insist the jury heard evidence of multiple fraudulent misrepresentations by Donald Fox, any one or combination of which could have served as

the basis for the $1.3 million fraud damage assessment.

The court first finds that defendants did not waive their double recovery argument. The Tenth Circuit held in *Corriz v. Naranjo,* 667 F.2d 892, 895–96 (10th Cir.1981),[3] that objections to jury instructions potentially allowing duplicative recovery for identical injuries ordinarily must be asserted prior to submission of the case to the jury. *See also* Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."). As defendants correctly point out, however, there was no reason for them to object to any double recovery instruction prior to submission. Plaintiffs, in their proposed pre-trial order, trial evidentiary presentation, and closing arguments, expressly limited their fraud damages request to the legal fees they incurred in setting aside the 1991 settlement. (Final Pre–Trial Order at 12 & 14; Tr. at 1480 & 1892). Moreover, a double recovery instruction was unnecessary inasmuch as the court instructed the jury only *after* plaintiffs' counsel had expressed in his closing argument that plaintiffs' fraud damages approximated $67,000.[4]

■ The court also agrees with defendants that the jury's $1.3 million award on plaintiffs' fraud claim must be reduced. The fact that the jury awarded more than the plaintiffs requested on this claim is not dispositive. *See Menne v. Celotex Corp.,* 861 F.2d 1453, 1474 (10th Cir.1988) (citing Fed.R.Civ.P. 54(c)) (holding that a party is entitled to all relief awarded by the jury, even if such relief exceeds what was requested in pleadings). A higher than requested award, however, may be sustained only if the evidence adduced at trial supports the verdict.

3. The Supreme Court effectively reversed *Corriz* on other grounds five years later in *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

4. Specifically, plaintiffs' counsel stated, "Now there's a fraud claim against Don Fox particularly in this case for all the lies he told to us trying to cover up Midland's violation of the settlement agreement. I don't know what fair damages are for that, but let me suggest to you a basis might be the $67,000 United Phosphorus had to pay to finally get that settlement agreement set aside. Plus something for the time and trouble the plaintiffs had to invest to get back to where they were on October 27th of 1991." Trial Tr. at 1892.

*See Kizziar v. Dollar*, 268 F.2d 914, 918 (10th Cir.1959). Although plaintiffs introduced abundant evidence of Fox's fraudulent conduct, they explicitly conceded in the Final Pre-trial Order that the damages flowing from the fraud were subsumed within the damages sought on the trademark infringement, fraudulent registration, and unfair competition claims. (*See* Final Pre–Trial Order at 12). In addition, the only damages reference plaintiffs made at trial with respect to their fraud claim indicated they suffered only $67,694.03 in damages distinct from their statutory claims. Notwithstanding the dicta in the December 1, 1997 Memorandum and Order assessing punitive damages against Donald Fox, the court concludes the jury's award on plaintiffs' fraud claim must be reduced to $67,694.03.[5]

### 4. Plaintiffs' Reliance on Donald Fox's Fraud

 Defendants next contend that plaintiffs failed to demonstrate reliance on a single fraudulent statement by Donald Fox at trial and, therefore, are not entitled to any fraud damages. The court disagrees. Plaintiffs established, through the testimony of Rajinikant Shroff, that in agreeing to settle their 1991 lawsuit with Midland, United relied on several false interrogatory responses by Fox (in his capacity as president of Midland) regarding the amount of L–Fume in Midland's possession, the true sales figures for Midland's improperly labeled L–Fume, and Midland's knowledge of its customer's rejection of the product.

Fox's attorney, based on information supplied to him by his client, also penned a letter in April 1992 to United indicating that Midland had disposed of all Quick–Phos in its inventory. Defendants maintain this letter, although containing false representations, cannot support plaintiffs' fraud claim because the court held as a matter of law that the parties' settlement had become effective in October 1991. The court rejects this argument. Although the settlement may have been in force, the false representations lulled plaintiffs into inaction and ultimately forced them to expend significant time and resources reopening the 1991 litigation. Indeed, defendants concede in their reply brief

that plaintiffs are entitled to the attorney fees they incurred in having the settlement agreement vacated. In sum, the court finds ample evidence to support a fraud award of $67,694.03.

### 5. Erroneous Admission of Evidence

 Defendants aver that the court's admission of Exhibit 51.6, a letter from Sandra Shroff to J.O. Hibbard confirming an exclusive distributorship agreement between United and Midland predecessor Phos–Fume Chemical Company, was erroneous. Defendants insist that they did not receive the document until the night before the trial began, thereby depriving them of the opportunity to depose Ms. Shroff and exposing them to significant prejudice. "[E]rror in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating the substantial rights were affected rests with the party asserting error." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1518 (10th Cir.1995) (quoting *K–B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155–56 (10th Cir.1985)).

The letter from Ms. Shroff, as plaintiffs correctly note, simply responded to a request from Mr. Hibbard for documentation of the exclusive distributorship arrangement. Defendants were aware of Mr. Hibbard's request, *see* Ex. 51.5, and should not have been unduly surprised by the existence of a responsive correspondence. Moreover, Mr. Hibbard corroborated the arrangement in his testimony. (Tr. at 1218). As far as the lack of opportunity to depose Ms. Shroff, the court pushed the trial date in this case forward by a month and any prejudice emanating from the diminished preparation time was allocated equally among the parties. The court concludes that the admission of Exhibit 51.6 did not adversely affect defendants' substantial rights.

### 6. Speculative Damages

 Defendants contend plaintiffs predicated their evidence of damages on pure speculation. The court does not concur. Plaintiffs' experts—Dr. Jeremiah Sullivan

---

5. This remittitur has no effect on the court's punitive damages award.

and Marc Vianello, quantified plaintiffs' damages by looking to the market shares and prices of both Midland and its competitors. While there may be a degree of inexactitude in plaintiffs' damages calculation, a party is not required to ascertain the harm it has suffered with mathematical precision. This principle is particularly true in Lanham Act cases in which the difficulty in computing damages often is attributable to the defendant's wrongdoing. *See Porous Medic. Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (D.C.Cir. 1997); *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 271 (2d Cir.1987); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564–65 (11th Cir.1986). The court believes there is a sufficient evidentiary basis for the jury's damage award and, therefore, will not disturb the verdict.

### B. Request For New Trial

Defendants' motion for a new trial primarily rehashes the same arguments they raise in their motion for judgment as a matter of law. Defendants also raise two distinct points, neither of which warrants the grant of a new trial.

■ Defendants first contend that the court improperly excluded Exhibits 466 and 469 during the testimony of Lyla Hibbard.[6] The court sustained plaintiffs' objections to the documents, which are two letters authored by Ms. Hibbard's husband, as inadmissible hearsay. Defendants claim these materials fall within the business records exception. *See* Fed.R.Evid. 803(6). The record contains no indication, however, that the letters were prepared contemporaneous with the events described therein. Nor do the documents contain the requisite trustworthiness to implicate the hearsay exception. The exhibits are not originals and contain no signatures. Under the circumstances, the court finds the documents somewhat suspect. Moreover, even if the court did err in excluding the exhibits, defendants have not shown that the error prejudicially affected their substantial rights.

Defendants' second point is that the court improperly permitted Mr. Shroff and Krish-

namoordhy Subramanian to testify that Mr. Hibbard did not object to United's claim of ownership over the Quick–Phos mark. The court excluded as hearsay all assertive comments by Mr. Hibbard regarding ownership of the mark but permitted the introduction of Mr. Hibbard's non-assertive statements. Defendants aver that the court should not have allowed plaintiffs to get this evidence in through such a "back door" procedure.

■ The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c). A "statement" is defined as an oral or written assertion or nonverbal conduct intended as an assertion. Fed. R.Evid. 801(a). These definitions effectively "exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion." Fed. R.Evid. 801(a) advisory committee note. Mr. Hibbard's lack of objection to United's claim of ownership of the Quick–Phos mark, as described at trial by Messrs. Shroff and Subramanian, does not amount to inadmissible hearsay.

> [W]ords and actions may convey meaning even though they were not consciously intended as assertions. Sometime the relevance of words or actions to show a particular fact depends on drawing an inference that a person would not have spoken or acted in a certain way unless the person believed a relevant fact to be true. Most courts have found that words or conduct offered to show the actor's implicit beliefs do not constitute statements under the hearsay rule.

5 Jack. B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.02[3][a] (2d ed.1997). Even if Mr. Hibbard's conduct did constitute hearsay, the admission of that testimony did not adversely effect defendants' substantial rights. No new trial will be ordered.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for

---

6. Defendants also object to the court's exclusion of Exhibit 471. The court admitted that exhibit at trial. (Tr. at 1632).

judgment as a matter of law or, in the alternative, for a new trial (Doc. 360) is granted to the extent that plaintiffs' damages on their fraud claim are reduced to $67,694.03. The motion is denied in all other respects.

IT IS FURTHER ORDERED that the clerk shall enter a revised judgment in favor of plaintiffs in the amount of $1,482,777.03.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**